## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF IOWA
## EASTERN DIVISION

| | | |
|---|---|---|
| **JEREMY KARG, MATTHEW R. LAMARCHE, AND SHIRLEY RHODES,** on behalf of themselves and all others similarly situated, | ) ) ) ) | **COMPLAINT- CLASS ACTION** <br> **No. _____** |
| Plaintiffs, | ) ) | **JURY TRIAL DEMANDED** |
| **v.** | ) ) | |
| **TRANSAMERICA CORPORATION; THE INVESTMENT COMMITTEE OF THE TRANSAMERICA 401(K) PLAN; and DOES 1-40** | ) ) ) ) | |
| Defendants. | ) ) ) ) ) ) ) | |

---

## COMPLAINT FOR DAMAGES

---

## I.      INTRODUCTION

1.      Plaintiffs Jeremy Karg, Matthew R. LaMarche, and Shirley Rhodes individually and as representatives of a class of similarly situated persons in Transamerica Corporation's 401(k) Plan  ("Plan") between December 28, 2012 and the date of final judgment in this action ("Class Period"), bring this action under the Employee Retirement Income Security Act of 1974, as amended, 29 U.S.C. 1001, et seq. ("ERISA"), against the Plan's fiduciaries: Transamerica

1

Corporation ("Transamerica"), the Transamerica Investment Committee (as defined herein), and DOES 1 through 40 inclusive ("DOES") (collectively, "Defendants").

2.      The Plan's participants trusted Transamerica to construct a 401(k) plan that offered superior investment options and world-class investment management. Yet Transamerica saddled the Plan's participants with substandard investment portfolios that were managed by a Transamerica affiliate, Transamerica Asset Management (TAM).

3.      Transamerica's investment conduct was imprudent. Year after year, Transamerica selected and retained poor-performing proprietary investment portfolios for the Plan when superior investment options were readily available. Specifically, Transamerica imprudently retained the following portfolios:

> (a) Transamerica International Equity Portfolio ("International Equity Portfolio")
>
> (b) Transamerica Small Core Portfolio ("Small Core Portfolio")
>
> (c) Transamerica Large Value Portfolio ("Large Value Portfolio")
>
> (d) Transamerica Large Growth Portfolio ("Large Growth Portfolio")
>
> (e) Transamerica High Yield Bond Portfolio ("High Yield Bond Portfolio")
>
> (f) Transamerica Mid Value Portfolio ("Mid Value Portfolio")

4.      The underperformance of these portfolios, relative to several meaningful benchmarks, was neither modest nor temporary.  For example, during the 2008-2017-time period, the International Equity Portfolio underperformed its benchmark, the Morgan Stanley All-World Country Index ex-USA, by approximately 30%. During the same period, the Small Core Portfolio underperformed its benchmark, the Russell 2000 Index, by over 15%. According to the Plan's own documents dated September 1, 2018, the International Equity Portfolio, the Small Core Portfolio and the Mid Value Portfolio each underperformed their respective investment benchmarks for the

past one, five, and ten-year periods. The Large Value Portfolio, the Large Growth Portfolio, and the High Yield Portfolio each underperformed their respective investment benchmarks for the past five and ten-year periods.

5.     As the investment adviser to the Transamerica investment portfolios, TAM—and by extension Transamerica—was or should have been aware of the portfolios' poor annual investment performance on a real-time basis. Any reasonable, disinterested investor monitoring their investments would have viewed these portfolios as imprudent investments and removed them from the Plan.

6.     Instead, Transamerica continued to offer proprietary portfolios when their rates of return were lower than meaningful benchmarks. Transamerica therefore neglected its duty to monitor the Plan's investments and remove imprudent ones. Transamerica's failure of effort and/or competence cost the Plan's participants millions of dollars in poor investment performance every year.

7.     Moreover, Transamerica exacerbated Plan participants' losses by encouraging them to sign up for Transamerica's Portfolio Xpress, a tool that automatically allocated participants' money to Transamerica's investment products. Upon information and belief, Portfolio Xpress increased the likelihood that participants would invest in one of Transamerica's imprudent proprietary portfolios.

8.     As described herein, Defendants have breached their fiduciary duties of prudence in violation of ERISA and to the detriment of Plaintiffs and the members of the proposed class. Plaintiffs bring this action to remedy Defendants' unlawful conduct, prevent further mismanagement of the Plan, and obtain monetary relief and equitable and other relief as provided by ERISA.

## II. JURISDICTION AND VENUE

9. This Court has exclusive jurisdiction over the subject matter of this action under 29 U.S.C. §1132(e)(1) and 28 U.S.C. §1331 because it is an action under 29 U.S.C. §1132(a)(2) and (3).

10. This District and Division are the proper venue for this action under 29 U.S.C. §1132(e)(2) and 28 U.S.C. §1391(b) because they are the District and Division in which the subject Plan is administered and where at least one of the alleged breaches took place. They are also the District and Division in which Defendant Transamerica Corporation resides.

## III. PARTIES

### A. Plaintiffs

11. PLAINTIFF JEREMY KARG was a participant in the Plan. At times during the Class Period, Plaintiff Karg owned interests in the Small Core Portfolio, the Large Value Portfolio, the Large Growth Portfolio, and the Mid Value Portfolio.

12. PLAINTIFF MATTHEW R. LAMARCHE is a participant in the Plan. At times during the Class Period, Plaintiff LaMarche owned the International Equity Portfolio, the Small Core Portfolio, the Large Value Portfolio, the Large Growth Portfolio, the High Yield Bond Portfolio, and the Mid Value Portfolio.

13. PLAINTIFF SHIRLEY RHODES is a participant in the Plan. At times during the Class Period, Plaintiff Rhodes owned interests in the International Equity Portfolio, the Small Core Portfolio, the Large Value Portfolio, the High Yield Bond Portfolio, Large Growth Portfolio, the High Yield Bond Portfolio, and the Mid Value Portfolio.

4

### B. Defendants

14.     DEFENDANT TRANSAMERICA CORPORATION ("Transamerica") is a Delaware corporation with its principal place of business in Cedar Rapids, Iowa. It sponsors the Plan and is a fiduciary under ERISA for the Plan because it established and administers the accounts in which the Plan invest, in addition to appointing, monitoring, and removing the members of the plan committees.

15.     Based on information and belief, the Plan has established an investment or similar type of committee to manage the assets of the Plan ("Investment Committee"). Current and former members of the DEFENDANT INVESTMENT COMMITTEE are fiduciaries of the Plan under 29 U.S.C. § 1002(21)(A) because they exercised discretionary authority or discretionary control respecting management of the Plan, and exercised authority or control respecting management or disposition of the Plan's assets.

16.     DOE DEFENDANTS 1 to 20 ("DOES 1-20") are the officers and directors of Defendant Transamerica Corporation during the Class Period who had the authority and responsibility to appoint, monitor. and remove members of Defendant Investment Committee. Does 1-20 are sued herein under fictitious names because after diligent and good faith efforts, the names, identities, and capacities of these officers and directors, whether individual, corporate, associate, or otherwise, are presently unknown to Plaintiffs. Plaintiffs will make the names or identities of said Defendants known to the Court after the information has been ascertained. Plaintiffs will substitute the real names of the Does when they become known to Plaintiffs.

17.     DOE DEFENDANTS 21 to 40 ("DOES 21-40") are the members of the Investment Committee during the Class Period. Does 21-40 are sued herein under fictitious names because after diligent and good faith efforts, the names, identities, and capacities of the members of the

Investment Committee, whether individual, corporate, associate, or otherwise, are presently unknown to Plaintiffs. Plaintiffs will make the names or identities of said Defendants known to the Court after the information has been ascertained. Plaintiffs will substitute the real names of the Does when they become known to Plaintiffs. To the extent the Investment Committee delegated any of its fiduciary functions to another person or entity, the nature and extent of which has not been disclosed to Plaintiffs, the person or entity to which the function was delegated is also a fiduciary under 29 U.S.C. § 1002(21)(A) for the same reasons.

18. Each of the Defendants is also subject to co-fiduciary liability under 29 U.S.C. § 1105(a)(1)–(3) because they enabled other fiduciaries to commit breaches of fiduciary duties through their appointment powers, failed to comply with 29 U.S.C. § 1104(a)(1)(b) in the administration of their duties, and failed to remedy other fiduciaries' breaches of their duties, despite having knowledge of the breaches.

19. Because the Transamerica individual entities, officers, directors, and committee members have acted as alleged herein as the agents of Transamerica Corporation, and/or co-fiduciaries, all defendants collectively are referred to as Transamerica or Transamerica Defendants.

## IV. FACTUAL ALLEGATIONS

### A. Nature of the Action

21. The Transamerica Corporation sponsors the Plan as a means for employees and participants to save and invest for retirement. The Plan is a profit-sharing plan that includes a "qualified cash or deferred arrangement" as described in Section 401(k) of the Internal Revenue Code, I.R.C. § 401(k) (1986) (hereinafter denoted as "the Code") and is subject to the provisions of ERISA. The Plan is established and maintained under a written document per 29 U.S.C. §

1102(a). The Plan provides for retirement income for over 17,000 Transamerica employees and former employees. That retirement income depends on contributions made on behalf of each employee by his or her employer (including employer matching contributions), deferrals of employee compensation, and the performance of investment options. Each year of the Class Period, the Plan's participants collectively invested millions of dollars in the Plan. As of December 31, 2017, the Plan had over $1.9 billion in assets.

22. At all times within the Class Period, the Transamerica Corporation and/or its appointees have had the exclusive authority to select investment options for the Plan. In essence, Transamerica and/or its appointees create a menu of investment options from which Plan participants select to invest their retirement savings. Throughout the Class Period, the TAM proprietary portfolios at issue in this action were the exclusive options in their respective actively managed investment strategies. For example, if a Plan participant wanted to invest in an actively managed portfolio of international value stocks, she had no choice but to invest in the Transamerica International Equity Portfolio.

23. In discharging their duties as Plan fiduciaries, Defendants owe a duty of care and prudence to the Plan participants under 29 U.S.C. § 1104(a)(1)(B). Specifically, ERISA requires Defendants to discharge their duties to the Plan "with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims." 29 U.S.C. § 1104(a)(1)(B).

24. As described herein, Defendants have breached this fiduciary duty of prudence by failing to remove six underperforming TAM proprietary funds from the Plan: (a) the International Equity Portfolio, (b) the Small Core Portfolio, (c) the Large Value Portfolio, (d) the Large Growth

Portfolio, (e) the High Yield Bond Fund, and (f) the Mid Value Portfolio. Transamerica's imprudent investment decisions cost the over 17,000 Plan participants millions of dollars in poor investment performance every year during the Class Period.

25. Previously, on May 19, 2016, certain participants and Transamerica entered into a class action Settlement Agreement and Release. *Dennard, et al. v. Transamerica Corp, et al*, No. C15-0030 (N.D. Iowa) ("*Dennard*"). *Dennard* settled claims that Transamerica (a) breached its fiduciary duty of loyalty under 29 U.S.C. § 1104(a)(1)(A) by failing to ensure that the fees and expenses paid out of the assets in the Plan were reasonable and (b) engaged in prohibited transactions under 29 U.S.C. § 1106(a) and (b) by receiving compensation from the Plan as a result of those decisions. *Dennard*'s limited release does not encompass the claims alleged herein under 29 U.S.C. § 1104(a)(1)(B) for Transamerica's failure to monitor the Plan and remove imprudent, poorly performing investments. Moreover, *Dennard* does not bind individuals with claims that arose after the entry of the Preliminary Approval Order in the *Dennard* case on June 24, 2016.

**B. Defendants Should Have Removed the Six TAM Funds at Issue In this Action**

26. The six TAM investment portfolios at issue in this action consistently underperformed relative to: (a) their stated investment benchmarks (i.e. the "market"); and (b) available funds identified by Morningstar[1] as comparator funds within their respective investment strategy categories.

27. These facts concerning the funds' chronic underperformance were available to Defendants in real time throughout the Class Period—not simply ex post with the benefit of

---

[1] Morningstar, Inc. is a leading provider of independent investment research products (e.g., data and research insights on managed investment products, publicly listed companies, and private capital markets) for individual investors, financial advisors, asset managers, retirement plan providers and sponsors, and institutional investors in the private capital markets in North America, Europe, Australia, and Asia.

hindsight. Any prudent fiduciary monitoring the Plan would have promptly engaged in a rigorous and objective process of identifying, evaluating and selecting replacements for the TAM funds. Transamerica's failure to replace the TAM investment portfolios with better options had a negative impact on the Plan, costing the participants millions of dollars in diminished investment performance.

28. Plaintiffs do not have actual knowledge of the specifics of Defendants' decision-making processes with respect to the Plan, including Defendants' processes for selecting, monitoring, and removing Plan investments, because this information is unavailable to Plaintiffs prior to discovery. For purposes of this Complaint, Plaintiffs have drawn reasonable inferences regarding these processes based upon (among other things) the facts set forth herein.

29. Below, Plaintiffs detail the underperformance of each of the six TAM funds at issue in this action.

### 1. Transamerica Partners International Equity Portfolio

30. The Transamerica Partners International Equity Portfolio (the "International Equity Portfolio") seeks long term capital appreciation through investment in a diversified portfolio of securities of foreign issuers that are undervalued. Although the International Equity Portfolio emphasizes larger, more seasoned or established companies, it may invest in companies of varying size as measured by assets, sales or market capitalization. According to Morningstar, since 2008, the International Equity Portfolio's investment style has drifted between blend and value. If a participant in the Plan sought a similarly managed international equity value strategy, the International Equity Portfolio was the only option available to them.

31. Transamerica was well-aware in real-time throughout the Class Period that the International Equity Portfolio suffered from abysmal performance.

32.     According to the Plan's own documents dated September 1, 2018, on an annualized basis, the International Equity Portfolio significantly underperformed its benchmark, the MSCI All Country World Index Ex USA, for the past one (-5.14%), five (-2.09%) and ten-year periods (-2.78%).

33.     Based on performance data set forth in the Forms N-CSR filed with the SEC and other available Morningstar performance data, in the ten-year period between January 1, 2008 and December 31, 2017, the International Equity Portfolio was an underachiever relative to its benchmark, the MSCI All Country World Index Ex USA, underperforming in eight out of ten years.  The International Equity Portfolio's aggregate ten-year underperformance relative to the benchmark was staggering – approximately 30%.

34.     Based on performance data set forth in the Forms N-CSR filed with the SEC and other available Morningstar performance data, in the five-year period leading up to the approximate start of the Class Period, the International Equity Portfolio underperformed its benchmark, the MSCI All-Country World Ex-US Index[2], by a staggering 19.62%.   It also underperformed other funds identified by Morningstar as comparable international value funds: the Hartford Schroders International Multi Cap Value Fund by 23.38%, the Ivy International Core Equity by 22.93%, and the Dodge & Cox International Stock Fund by 18.98%. Like the International Equity Portfolio, each of these funds actively invests primarily in a diversified portfolio of common stocks of non-U.S. companies.

35.     Table 1a below illustrates the International Equity Portfolio's annual and cumulative underperformance relative to the three comparator funds (Hartford Schroders

---

[2]  In 2008, the Transamerica Partners International Equity Portfolio identified the MSCI World Ex-US Index as its benchmark. The benchmark changed from the MSCI World Ex-US Index to the MSCI All-Country World Ex-US Index on December 31, 2008.

International Multi Cap Value Fund; Ivy International Core Equity Fund; and Dodge & Cox International Stock Fund) and the benchmark (MSCI ACWI Ex USA Index) between 2008 and 2012. The International Equity Portfolio's underperformance was such that any prudent fiduciary would have noticed it, would have undertaken an investigation of readily available alternative investments, and would have removed the Portfolio at the start of the Class Period.

**Table 1a**. **International Equity Portfolio Performance 2008-2012**

| Fund | 2008 | 2009 | 2010 | 2011 | 2012 | Cumulative |
|---|---|---|---|---|---|---|
| Transamerica Partners International Equity Portfolio | -49.94 | 26.10 | 14.94 | -13.51 | 17.35 | **-26.36%** |
| | | | | | | |
| Hartford Schroders International Multi Cap Value Fund (SIDNX) | -44.39 | 51.26 | 16.82 | -12.40 | 19.45 | **+2.28%** |
| Transamerica +/-[3] | -9.98 | -16.63 | -1.61 | -1.27 | -1.76 | |
| +/- Cumulative | -9.98 | -24.95 | -26.16 | -27.10 | -28.38 | **-28.38%** |
| | | | | | | |
| Ivy International Core Equity Fund (ICEIX) | -41.24 | 45.03 | 13.92 | -13.66 | 13.99 | **-4.45%** |
| Transamerica +/- | -14.81 | -13.05 | 0.90 | 0.17 | 2.95 | |
| +/- Cumulative | -14.81 | -25.93 | -25.26 | -25.13 | -22.93 | **-22.93%** |
| | | | | | | |
| Dodge & Cox International Stock Fund (DODFX) | -46.69 | 47.46 | 13.69 | -15.97 | 21.03 | **-9.11%** |
| Transamerica +/- | -6.10 | -14.49 | 1.10 | 2.93 | -3.04 | |

[3] This table uses compounding formulas to calculate the relative performance of the Transamerica Portfolio compared to each of the comparator funds and the benchmark. Compounding formulas account for the impact of each of the investment option's prior performance on its current returns.

The compounding formula used for any one year is:
[(1 + Portfolio return,%) / (1 + comparator return,%)] - 1.

For multiple years, the formula is expanded as follows:
$$\left\{ \frac{(1 + \text{Portfolio return}, \%_{\text{year 1}})*(1 + \text{Portfolio return}, \%_{\text{year 2}}) \ldots * (1 + \text{Portfolio return}, \%_{\text{year n}})}{(1 + \text{comparator return}, \%_{\text{year 1}})*(1 + \text{comparator return}, \%_{\text{year 2}}) \ldots * (1 + \text{Portfolio return}, \%_{\text{year n}})} \right\} - 1$$

| | | | | | | |
|---|---|---|---|---|---|---|
| +/- Cumulative | -6.10 | -19.70 | -18.82 | 16.44 | -18.98 | **-18.98.%** |
| | | | | | | |
| MSCI ACWI Ex USA Index[4] | -43.23 | 42.14 | 11.60 | -13.33 | 17.39 | **-8.38%** |
| Transamerica +/- | -11.82 | -11.28 | 2.99 | -0.21 | -0.03 | |
| +/- Cumulative | -11.82 | -21.77 | -19.43 | -19.60 | -19.62 | **-19.62%** |

36.     The comparator funds listed in Table 1a above are well known, readily available, easily accessible to all investors, and identified by Morningstar as comparable international equity investment funds. These superior alternative investments were readily apparent such that a reasonable and objective investigation would have uncovered them.  Transamerica would not have had to scour the market to find them.

37.     Yet Transamerica continued to offer the International Equity Portfolio in the Plan despite the Portfolio's underperformance and a marketplace replete with clearly superior international equity offerings from reputable, blue-chip companies such as Schroder's Investment Management, Ivy Investment Company, and Dodge & Cox.

38.     Predictably, the underperformance continued into the Class Period.  The International Equity Portfolio underperformed year after year both its benchmark and funds identified by Morningstar as comparator funds in the international equity strategy for the period between January 1, 2013 and November 30, 2018.   The International Equity Portfolio underperformed the Ivy International Core Fund by 16.26%, the Dodge & Cox International Stock Fund by 12.68%, and the Hartford Schroders International Multi-Cap Value Fund by 11.48%. The International Equity Portfolio also underperformed the MSCI ACWI ex-USA Index by 8.53%. Transamerica would have seen the chronic underperformance in real time—not simply ex post

---

[4] 2008 reflects the performance of the MSCI World Ex-US Index.

with the benefit of hindsight. Transamerica's refusal to remove the International Equity Portfolio despite the Fund's ongoing underperformance during the Class Period was imprudent.

39.     If Transamerica had faithfully and prudently executed its fiduciary duties to the Plan and its participants, it would have replaced the International Equity Portfolio with one of the many better-performing options available at the start of 2013. As illustrated in Table 1b below, Transamerica's failure to replace the International Equity Portfolio with a better fund option in January 2013, and in every year thereafter, caused millions in damages to participants' retirement accounts.

**Table 1b**. **International Equity Portfolio Investment Growth 2013-2018**

| Fund Name | Cumulative/Compounded Performance | Annualized Performance | Growth of $62 Million[5] |
|---|---|---|---|
| Transamerica Partners International Equity Portfolio[6] | 15.45% | 2.46% | $71.58 million |
| Hartford Schroders International Multi Cap Value Fund (SIDNX) | 29.45% | 4.46% | $80.26 million |
| Dodge & Cox International Stock Fund (DODFX) | 32.21% | 4.83% | $81.97 million |
| Ivy International Core Equity Fund (ICEIX) | 37.87% | 5.58% | $85.48 million |
| MSCI ACWI Ex USA GR Index | 26.21% | 4.01% | $78.25 million |

[5] Upon information and belief, this was the approximate value of the assets in the Portfolio as of December 31, 2012.

[6] According to Plan documents, effective March 10, 2017, the Transamerica Partners International Equity Portfolio reorganized into the mutual fund Transamerica International Equity Fund, Class I3 Shares (TRWTX).

13

### 2. Transamerica Partners Small Core Portfolio

40. The Transamerica Partners Small Core Portfolio (the "Small Core Portfolio") seeks long term capital appreciation by investing primarily in stocks of companies with small market valuations (or small-cap companies) which present an opportunity for significant increases in value, without consideration for current income. The Small Core Portfolio considers small-cap companies to be companies with a total market value that is within the range of valuations of the companies that are included in the Russell 2000 Index. On December 31, 2017, the market values of companies in the Russell 2000 Index ranged from $23 million to $9.4 billion. According to Morningstar, the investment style of the Small Core Portfolio drifted between a blend and a value.

41. If a participant in the Plan sought a similarly managed small-cap strategy, the Small Core Portfolio was the only option available to them.

42. Transamerica was well aware in real-time of the abysmal performance of its Small Core Portfolio. According to the Plan's own documents dated September 1, 2018, on an annualized basis, the Small Core Portfolio had significantly underperformed its benchmark, the Russell 2000 Index, for the past one (-8.11%), five (-3.52%), and ten-year periods (-1.67%).

43. Based on performance data set forth in the Forms N-CSR filed with the SEC and other available Morningstar performance data, in the five-year period leading up to the approximate start of the Class Period, the Small Core Portfolio underperformed other funds identified by Morningstar as comparable small cap value and blend funds: the Glenmede Small Cap Equity Fund by 4.92%, the Delaware Small Cap Core Fund by 2.88%, and the Charles Schwab

14

Small Cap Equity Fund by 1.13%.[7]  Like the Small Core Portfolio, each of these funds actively invest in a diversified portfolio of common stocks of small companies.

44.     Although between 2008 and 2012, the Small Core Portfolio performed on par with its benchmark, the Russell 2000 Index, the underperformance relative to these comparator funds was such that any prudent fiduciary would have undertaken an investigation of readily available alternatives that should have led to the eventual removal of the Small Core Portfolio.

45.     The Small Core Portfolio's deficiencies became even more obvious after 2012. As illustrated in Table 2a below, the Fund significantly underperformed the Russell 2000 Index as well as the comparator funds in 2012, 2013 and 2014.  Accordingly, by no later than January 2015, it was readily apparent that the Small Core Portfolio's performance had turned drastically sour. The underperformance was such that any prudent fiduciary would have seen it, would have undertaken an investigation of readily available alternatives, and would have removed the portfolio by January 2015.

**Table 2a.        Small Core Portfolio Performance 2008-2014**

| Fund | 2008 | 2009 | 2010 | 2011 | 2012 | 2013 | 2014 | Cumulative |
|---|---|---|---|---|---|---|---|---|
| Transamerica Partners Small Core Portfolio | -36.06 | 27.64 | 29.89 | -2.19 | 15.04 | 33.62 | 4.21 | **66.09%** |
| Charles Schwab Small Cap Equity Fund (SWSCX) | -38.22 | 27.92 | 24.66 | -0.50 | 20.59 | 43.34 | 6.91 | **82.97%** |

---

[7] During this same period, the Transamerica Partners Small Core Portfolio outperformed its benchmark, the Russell 2000 Index by 1.92%

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| Transamerica +/-[8] | 3.50 | -0.22 | 4.20 | -2.68 | -4.60 | -6.78 | -2.53 | |
| +/- Cumulative | 3.50 | 3.27 | 7.60 | 4.72 | -0.10 | -6.87 | -9.22 | **-9.22%** |
| Delaware Small Cap Core Fund(DCZRX) | -35.07 | 27.35 | 28.72 | 0.58 | 15.62 | 43.24 | 8.85 | **+92.99%** |
| Transamerica +/- | -1.52 | 0.23 | 0.91 | -2.75 | -0.50 | -6.72 | -4.26 | |
| +/- Cumulative | -1.52 | -1.30 | -0.40 | -3.15 | -3.63 | -10.10 | -13.94 | **-13.94%** |
| Glenmede Small Cap Equity Fund (GTSCX) | -36.67 | 30.78 | 27.51 | 0.34 | 16.98 | 48.20 | 3.28 | **+89.73%** |
| Transamerica +/- | 0.96 | -2.40 | 1.87 | -2.52 | -1.66 | -9.84 | 0.90 | |
| +/- Cumulative | 0.96 | -1.46 | 0.38 | -2.15 | -3.78 | -13.24 | -12.46 | **-12.46%** |
| Russell 2000 Index | -33.79 | 27.17 | 26.85 | -4.18 | 16.35 | 38.82 | 4.89 | **+73.38%** |
| Transamerica +/- | -3.43 | 0.37 | 2.40 | 2.08 | -1.13 | -3.75 | -0.65 | |
| +/- Cumulative | -3.43 | -3.07 | -0.75 | 1.31 | 0.17 | -3.58 | -4.21 | **-4.21%** |

46.     The comparator funds listed in table 2a above are well known, readily available, easily accessible to all investors, and identified by Morningstar as comparable small cap investment funds.   These superior alternative investments were readily apparent such that a

---

[8] This table uses compounding formulas to calculate the relative performance of the Transamerica Portfolio compared to each of the comparator funds and the benchmark. For a description of compounding formulas *see* note 3 *supra*.

reasonable and objective investigation would have uncovered them. Transamerica would not have had to scour the market to find them. Yet Transamerica continued to offer its Small Core Portfolio in the Plan despite the underperformance and a marketplace replete with clearly superior small-cap offerings from reputable, blue-chip companies such as Charles Schwab, Delaware Capital Management, and Glenmede Investment Management.

47.     Predictably, the underperformance continued. The Small Core Portfolio underperformed year after year relative to both its benchmark and funds identified by Morningstar as comparator funds in the small-cap strategy for the period between January 1, 2015 and November 30, 2018. The Small Core Portfolio underperformed the Delaware Small Cap Core Fund by 13.84%, the Charles Schwab Small Cap Equity Fund by 9.61%, and the Glenmede Small Cap Equity Fund by 10.19%. The Small Core Portfolio also underperformed the Russell 2000 Index by 12.31%. Transamerica would have seen the chronic underperformance in real time—not simply ex post with the benefit of hindsight. Transamerica's refusal to remove the Small Core Portfolio despite the Fund's ongoing underperformance during the Class Period was imprudent.

48.     If Transamerica had faithfully and prudently executed its fiduciary duties to the Plan and its participants, it would have replaced the Transamerica Partners Small Core Portfolio with one of the many better-performing options available on the market. As illustrated in Table 2b below, Transamerica's failure to replace the fund with a better fund option in January 2015 caused millions of dollars in damages to participants' retirement accounts.

**Table 2b**. **Small Core Portfolio Investment Growth 2015-2018**

| Fund Name | Cumulative/Compounded Performance | Annualized Performance | Growth of $55 Million[9] |
|---|---|---|---|
| Transamerica Partners Small Core Portfolio[10] | 17.75% | 4.26% | $64.76 million |
| Charles Schwab Small Cap Equity Fund (SWSCX) | 30.28% | 6.99% | $71.65 million |
| Delaware Small Cap Core Fund (DCZRX) | 36.67% | 8.30% | $75.17 million |
| Glenmede Small Cap Equity Fund (GTSCX) | 31.12% | 7.16% | $72.11 million |
| Russell 2000 TR Index | 34.28% | 7.82% | $73.85 million |

3.       **Transamerica Partners Large Value Portfolio**

49.       The Transamerica Partners Large Value Portfolio ("Large Value Portfolio") seeks to provide long-term capital appreciation by investing primarily in a diversified portfolio of common stocks of large-capitalization companies that may be out of favor and undervalued. The fund considers large cap companies to be companies with a market value that, at the time of initial purchase, exceed the market value of the smallest company included in the Russell 1000 Index. As of December 31, 2017, the market value of the smallest company in the Russell 1000 Index was $654 million. If a participant in the Plan sought an actively managed large cap value strategy, the Large Value Portfolio was the only option available to them.

---

[9] This is the approximate value of assets in the Portfolio as of December 31, 2014.

[10] According to Plan documents, effective March 10, 2017, the Transamerica Partners Small Core Portfolio reorganized into the mutual fund Transamerica Small Cap Core Fund, Class I3 Shares (TCCTX).

18

50.    Transamerica was well aware in real-time of the long-term underperformance of its Large Value Portfolio. According to the Plan's own documents dated September 1, 2018, on an annualized basis, Large Value Portfolio had underperformed its benchmark, the Russell 1000 Value Index, for the past five (-.24%) and ten-year periods (-1.36%).

51.    Based on performance data set forth in the Forms N-CSR filed with the SEC and other available Morningstar performance data, in the ten-year period between January 1, 2008 and December 31, 2017, the Large Value Portfolio was an underachiever relative to its benchmark, the Russell 1000 Value Index, underperforming in six out of ten years.

52.    Based on performance data set forth in the Forms N-CSR filed with the SEC and other available Morningstar performance data, in the five-year period between January 1, 2008 and December 31, 2012, the Large Value Portfolio underperformed the Russell 1000 Value Index, by 10.71%. It also underperformed funds identified by Morningstar as comparable large cap value strategies: the Large Value Portfolio underperformed the DFA Large Cap Value Portfolio by 16.23%, the Nuveen Large Cap Value Fund by 10.07%, and the Dodge & Cox Stock Fund by 7.21%.

53.    Table 3a below illustrates the Large Value Portfolio's annual and cumulative underperformance relative to the three comparator funds (Dodge & Cox Stock Fund; Nuveen Large-Cap Value Fund; and DFA U.S. Large Cap Value Portfolio) and the benchmark (Russell 1000 Value Index) between 2008 and 2012. The Large Value Portfolio's underperformance was such that any prudent fiduciary would have noticed it, would have undertaken an investigation of readily available alternative investments, and would have removed the Portfolio at the start of the Class Period.

**Table 3a**.  **Large Value Portfolio Performance 2008-2012**

| Fund | 2008 | 2009 | 2010 | 2011 | 2012 | Cumulative |
|---|---|---|---|---|---|---|
| Transamerica Partners Large Value Portfolio | -42.94 | 16.71 | 14.66 | 2.32 | 17.39 | **-8.28%** |
| | | | | | | |
| Dodge & Cox Stock Fund (DODGX) | -43.31 | 31.27 | 13.49 | -4.08 | 22.01 | **-1.16%** |
| Transamerica +/-[11] | 0.65 | -11.09 | 1.03 | 6.67 | -3.79 | |
| +/- Cumulative | 0.65 | -10.51 | -9.59 | -3.56 | -7.21 | **-7.21%** |
| | | | | | | |
| Nuveen Large-Cap Value Fund I (NNGRX) | -36.01 | 22.68 | 14.12 | -1.19 | 15.21 | **+1.99%** |
| Transamerica +/- | -10.83 | -4.87 | 0.47 | 3.55 | 1.89 | |
| +/- Cumulative | -10.83 | -15.17 | -14.77 | -11.74 | -10.07 | **-10.07%** |
| | | | | | | |
| DFA U.S. Large Cap Value Portfolio Institutional Class (DFLVX) | -40.80 | 30.19 | 20.17 | -3.14 | 22.05 | **+9.49%** |
| Transamerica +/- | -3.61 | -10.35 | -4.59 | 5.64 | -3.82 | |
| +/- Cumulative | -3.61 | -13.59 | -17.56 | -12.91 | -16.23 | **-16.23%** |
| | | | | | | |
| Russell 1000 Value Index | -36.85 | 19.69 | 15.51 | 0.39 | 17.51 | **+2.99%** |
| Transamerica +/- | -9.64 | -2.49 | -0.74 | 1.92 | -0.10 | |
| +/- Cumulative | -9.64 | -11.89 | -12.54 | -10.86 | -10.95 | **-10.95%** |

54.     The comparator funds listed in table 3a above are well known, readily available, easily accessible to all investors, and identified by Morningstar as comparable large value investment funds.  These superior alternative investments were readily apparent such that a reasonable and objective investigation would have uncovered them.  Transamerica would not have had to scour the market to find them.

---

[11] This table uses compounding formulas to calculate the relative performance of the Transamerica Portfolio compared to each of the comparator funds and the benchmark. For a description of compounding formulas *see* note 3 *supra*.

Case 1:18-cv-00134-CJW-KEM   Document 1   Filed 12/28/18   Page 20 of 44

55.     Yet Transamerica continued to offer its Large Value Portfolio in the Plan despite the underperformance and a marketplace replete with clearly superior large value offerings from reputable, blue-chip companies such as Dodge & Cox, Dimensional Fund Advisors, and Nuveen.

56.     Predictably, the underperformance continued into the Class Period. Between January 1, 2013 and November 30, 2018, the Large Value Portfolio continued to underperform year after year relative to those funds identified by Morningstar as comparator funds in the large value strategy for the period. The Large Value Portfolio underperformed the Dodge & Cox Stock Fund by 12.86%, the DFA Large Cap Value Portfolio by 7.87%, and the Nuveen Large Cap Value Fund by 2.89%. The Large Value Portfolio also underperformed the Russell 1000 Value Index, by 1.49%. Transamerica would have seen the chronic underperformance in real time—not simply ex post with the benefit of hindsight. Transamerica's failure to remove the Large Cap Portfolio despite its ongoing underperformance was imprudent.

57.     If Transamerica had faithfully and prudently executed its fiduciary duties to the Plan and its participants, it would have replaced the Portfolio with one of the many better-performing options available on the market. As illustrated in Table 3b below, Transamerica's failure to replace the Large Value Portfolio with a better fund option in January 2013 caused millions of dollars in damages to participants' retirement accounts.

**Table 3b**. **Large Value Portfolio Investment Growth 2013-2018**

| Fund Name | Cumulative/Compounded Performance | Annualized Performance | Growth of $80 Million[12] |
|---|---|---|---|
| Transamerica Partners Large Value Portfolio (TLOTX) [13] | 92.82% | 11.74% | $154.26 million |
| Dodge & Cox Stock Fund (DODGX) | 121.28% | 14.37% | $177.02 million |
| Nuveen Large-Cap Value Fund I (NNGRX) | 98.56% | 12.29% | $158.85 million |
| DFA U.S. Large Cap Value Portfolio Institutional Class (DFLVX) | 109.30% | 13.30% | $167.44. million |
| Russell 1000 Value Index | 95.74% | 12.02% | $156.59 million |

### 4. Transamerica Partners Large Growth Portfolio

58.     The Transamerica Partners Large Growth Portfolio (the "Large Growth Portfolio") seeks to provide a high level of capital appreciation through investments in a diversified portfolio of common stocks with a potential for above-average growth in earnings. The Large Growth Portfolio normally invests primarily in securities of large cap companies considered to be "growth stocks"—that is, common stocks that have the potential for above average growth in earnings and

---

[12] Upon information and belief, this was the approximate value of the assets in the Portfolio as of December 31, 2012.

[13]   According to Plan documents, effective May 5, 2017, the Transamerica Partners Large Value Portfolio reorganized into the mutual fund Transamerica Large Value Opportunities Fund, Class I3 Shares (TLOTX).

dividends. If participants in the Plan sought a large cap growth strategy, the Large Growth Portfolio was the only option available to them.

59. Transamerica was well aware in real-time of the long-term underperformance of its Large Growth Portfolio. According to the Plan's own documents dated September 1, 2018, on an annualized basis, the Large Growth Portfolio had underperformed its benchmark, the Russell 1000 Growth Index, for the past five-year (-.30%) and ten-year (-1.06%) periods.

60. Based on performance data set forth in the Forms N-CSR filed with the SEC and other available Morningstar performance data, the Large Growth Portfolio underperformed its benchmark and other readily available funds identified by Morningstar as large cap growth funds. In the five-year period between 2008 and 2012, the Large Growth Portfolio underperformed its benchmark, the Russell 1000 Growth Index, by 3.08%. The Large Growth Portfolio also underperformed the Fidelity Blue Chip Growth by 8.11%, the T. Rowe Price Institutional Large Growth Fund by 7.56%, and the Vanguard PRIMECPAP Fund by 2.62%.

61. Table 4a below illustrates the Large Growth Portfolio's annual and cumulative underperformance relative to the three comparator funds (Fidelity Blue Chip Growth Fund K; Vanguard PRIMECAP Fund; and T. Rowe Price Institutional Large Cap Growth Fund) and the benchmark (Russell 1000 Growth Index) between 2008 and 2012. The Large Growth Portfolio's underperformance was such that any prudent fiduciary would have noticed it, would have undertaken an investigation of readily available alternative investments, and would have removed the Portfolio at the start of the Class Period.

**Table 4a.  Large Growth Portfolio Performance 2008-2012**

| Fund | 2008 | 2009 | 2010 | 2011 | 2012 | Cumulative |
|---|---|---|---|---|---|---|
| Transamerica Partners Large Growth Portfolio | -36.65 | 35.56 | 16.62 | -1.78 | 14.91 | **+13.03%** |
| | | | | | | |
| Fidelity Blue Chip Growth Fund K (USD, FBGKX) | -38.52 | 45.31 | 19.80 | -2.56 | 17.95 | **+23.00%** |
| Transamerica +/-[14] | 3.04 | -6.71 | -2.65 | 0.80 | -2.58 | |
| +/- Cumulative | 3.04 | -3.87 | -6.42 | -5.67 | -8.11 | **-8.11%** |
| | | | | | | |
| Vanguard PRIMECAP Fund (VPMCX) | -32.41 | 34.45 | 12.89 | -1.84 | 15.27 | **+16.08%** |
| Transamerica +/- | -6.27 | 0.83 | 3.30 | 0.06 | -0.31 | |
| +/- Cumulative | -6.27 | -5.50 | -2.38 | -2.32 | -2.62 | **-2.62%** |
| | | | | | | |
| T. Rowe Price Instl Large Cap Growth Fund (TRLGX) | -40.86 | 53.40 | 16.29 | -1.40 | 17.55 | **+22.28%** |
| Transamerica +/- | 7.12 | -11.63 | 0.28 | -0.39 | -2.25 | |
| +/- Cumulative | 7.12 | -5.34 | -5.07 | -5.44 | -7.56 | **-7.56%** |
| | | | | | | |
| Russell 1000 Growth Index | -38.44 | 37.21 | 16.71 | 2.64 | 15.26 | **+16.62%** |
| Transamerica +/- | 2.91 | -1.20 | -0.08 | -4.31 | -0.30 | |
| +/- Cumulative | 2.91 | 1.67 | 1.59 | -2.78 | -3.08 | **-3.08%** |

62.     The comparator funds listed in table 4a above are well known, readily available, easily accessible to all investors, and identified by Morningstar as comparable large cap growth investment funds.   These superior alternative investments were readily apparent such that a reasonable and objective investigation would have uncovered them.  Transamerica would not have had to scour the market to find them.

---

[14] This table uses compounding formulas to calculate the relative performance of the Transamerica Portfolio compared to each of the comparator funds and the benchmark. For a description of compounding formulas *see* note 3 *supra*.

Case 1:18-cv-00134-CJW-KEM   Document 1   Filed 12/28/18   Page 24 of 44

63.     Yet Transamerica kept its Large Growth Portfolio in the Plan despite the underperformance and a marketplace replete with clearly superior large cap growth offerings from reputable, blue-chip companies such as Fidelity, T. Rowe Price, and Vanguard.

64.     Predictably, the underperformance continued into the Class Period. Between January 1, 2013 and November 30, 2018, the Large Growth Portfolio underperformed the T. Rowe Price Institutional Large Growth Fund by 14.07%; the Vanguard PRIMCAP Fund by 9.99%; and the Fidelity Blue Chip Growth by 6.28%. The Large Growth Portfolio also underperformed the Russell 1000 Growth Index by .46%. Transamerica would have seen the chronic underperformance in real time—not simply ex post with the benefit of hindsight. Transamerica's failure to remove the Large Growth Portfolio despite its ongoing underperformance was imprudent. If Transamerica had faithfully and prudently executed its fiduciary duties to the Plan and its participants, it would have replaced the Transamerica Partners Large Growth Portfolio with one of the many better-performing options available. As illustrated in Table 4b, Transamerica's failure to replace the fund with a better option caused millions of dollars in damages to participants' retirement accounts.

**Table 4b.  Large Growth Portfolio Investment Growth 2013-2018**

| Fund Name | Cumulative/Compounded Performance | Annualized Performance | Growth of $130 Million[15] |
|---|---|---|---|
| Transamerica Partners Large Growth Portfolio[16] | 138.56% | 15.83% | $310.13 million |
| Fidelity Blue Chip Growth Fund K (FBGKX) | 154.56% | 17.11% | $330.93 million |
| Vanguard PRIMECAP Fund (VPMCX) | 165.05% | 17.91% | $344.56 million |
| T. Rowe Price Instl Large Cap Growth Fund (TRLGX) | 177.62% | 18.84% | $360.91 million |
| Russell 1000 Growth TR Index | 139.67% | 15.92% | $311.57 million |

### 5.  Transamerica Partners High Yield Bond Portfolio

65.     The Transamerica Partners High Yield Bond Portfolio (the "High Yield Bond Portfolio") seeks a high level of current income by investing in high-yield bonds (commonly known as "junk bonds").  Junk bonds are high-risk debt securities rated below investment grade (that is, securities rated below BBB by Standard & Poor's or Fitch or below Baa by Moody's). If participants in the Plan sought a high yield fixed income strategy, the High Yield Bond Portfolio was the only option available to them.

66.     Transamerica was well aware in real-time of the long-term underperformance of its High Yield Bond Portfolio. According to the Plan's own documents dated September 1, 2018, on

---

[15] Upon information and belief, this was the approximate value of the assets in the Portfolio as of December 31, 2012.

[16] According to Plan documents, effective March 10, 2017, the Transamerica Partners Large Growth Portfolio reorganized into the mutual fund Transamerica Large Growth Fund, Class I3 Shares (TGWTX).

an annualized basis, the High Yield Bond Portfolio had underperformed its benchmark, the Merrill Lynch High Yield Master II Index, for the past five and ten-year periods.

67.     Based on performance data set forth in the Forms N-CSR filed with the SEC and other available Morningstar performance data, in the ten-year period between January 1, 2008 and December 31, 2017, the High Yield Bond Portfolio was an underachiever relative to its benchmark the Merrill Lynch High Yield Master II Index, underperforming by over 4.5%. For persons living on a fixed income, 4.5% can be a significant shortfall.

68.     Based on performance data set forth in the Forms N-CSR filed with the SEC and other available Morningstar performance data, in the five-year period between January 1, 2008 and December 31, 2012, the High Yield Bond Portfolio underperformed the Merrill Lynch High Yield Master II Index by 2.94%. The High Yield Bond Portfolio also underperformed funds identified by Morningstar as comparable high yield fixed income strategies. For example, the High Yield Bond Portfolio underperformed the Ivy High Income Fund by 7.80%, the Loomis Sayles High Income Opportunities Fund by 3.95%, and the Federated High Yield Trust by 1.85%.

69.     Table 5a below illustrates the High Yield Bond Portfolio's annual and cumulative underperformance relative to the three comparator funds (Federated High Yield Trust; Loomis Sayles High Income Opportunities Fund; and Ivy High Income Fund) and the benchmark (Merrill Lynch High Yield Master II Index) between 2008 and 2012. The High Yield Bond Portfolio's underperformance was such that any prudent fiduciary would have noticed it, would have undertaken an investigation of readily available alternative investments, and would have removed the Portfolio at the start of the Class Period.

**Table 5a**. **High Yield Bond Portfolio Performance 2008-2012**

| Fund | 2008 | 2009 | 2010 | 2011 | 2012 | Cumulative |
|---|---|---|---|---|---|---|
| Transamerica Partners High Yield Bond Portfolio | -28.90 | 57.21 | 15.81 | 4.93 | 15.14 | **+56.39%** |
| | | | | | | |
| Federated High Yield Trust (FHYTX) | -28.12 | 55.52 | 16.40 | 3.48 | 18.34 | **+59.34%** |
| Transamerica +/-[17] | -1.09 | 1.09 | -0.51 | 1.40 | 2.70 | |
| +/- Cumulative | -1.09 | -.01 | -0.52 | 0.88 | -1.85 | **-1.85%** |
| | | | | | | |
| Loomis Sayles High Income Opportunities Fund (LSIOX) | -28.54 | 60.32 | 15.91 | 1.53 | 20.77 | **+62.83%** |
| Transamerica +/ | -0.50 | -1.94 | -0.09 | 3.35 | -4.66 | |
| +/- Cumulative | -0.50 | -2.43 | -2.52 | 0.75 | -3.95 | **-3.95%** |
| | | | | | | |
| Ivy High Income Fund (IVHIX) | -19.73 | 46.56 | 15.62 | 6.44 | 17.16 | **69.62%** |
| Transamerica +/ | -11.42 | 7.27 | 0.16 | -1.42 | -1.72 | |
| +/- Cumulative | -11.42 | -4.99 | -4.83 | -6.18 | -7.80 | **-7.80%** |
| | | | | | | |
| Merrill Lynch High Yield Master II Index | -26.39 | 57.51 | 15.19 | 4.38 | 15.58 | **+61.12%** |
| Transamerica +/ | -3.41 | -0.19 | 0.54 | 0.53 | -0.38 | |
| +/- Cumulative | -3.41 | -3.59 | -3.07 | -2.56 | -2.94 | **-2.94%** |

70.     The comparator funds listed in table 5a above are well known, readily available, easily accessible to all investors and identified by Morningstar as comparable high yield investment funds. These superior alternative investments were readily apparent such that a reasonable and objective investigation would have uncovered them. Transamerica would not have had to scour the market to find them.

---

[17] This table uses compounding formulas to calculate the relative performance of the Transamerica Portfolio compared to each of the comparator funds and the benchmark. For a description of compounding formulas *see* note 3 *supra*.

71.     Yet Transamerica continued to offer its High Yield Bond Portfolio in the Plan despite the underperformance and a marketplace replete with clearly superior large value offerings from reputable, blue-chip companies such as Federated Investors, Loomis Sayles, and Ivy Investment Management Company.

72.     Predictably, the underperformance continued into the Class Period. Between January 1, 2013 and November 30, 2018, the High Yield Bond Portfolio continued to underperform year after year relative to funds identified by Morningstar as comparator funds in the high yield fixed income strategy. The High Yield Bond Portfolio underperformed the Federated High Yield Trust by 5.69%, the Loomis Sayles High Income Opportunities Fund by 5.58%, and the Ivy High Income Fund by 1.53%. The High Yield Bond Portfolio also underperformed the Merrill Lynch High Yield Master II Index by 1.46%.   Transamerica would have seen the chronic underperformance in real time—not simply ex post with the benefit of hindsight. Transamerica's failure to remove the Large Growth Portfolio despite its ongoing underperformance was imprudent.

73.     If Transamerica had faithfully and prudently executed its fiduciary duties to the Plan and its participants, it would have replaced the High Yield Portfolio with one of the many better-performing options available on the market. As illustrated in Table 5b below, Transamerica's failure to replace the fund with a better option in January 2013 caused participants' retirement accounts to unnecessarily suffer diminished investment performance.

Case 1:18-cv-00134-CJW-KEM   Document 1   Filed 12/28/18   Page 29 of 44

**Table 5b**.  **High Yield Bond Portfolio Investment Growth 2013-2018**

| Fund Name | Cumulative/Compounded Performance | Annualized Performance | Growth of $35 Million[18] |
|---|---|---|---|
| Transamerica Partners High Yield Portfolio[19] | 30.38% | 4.59% | $45.63 million |
| Federated High Yield Trust Institutional Shares (FHYTX) (FHTIX - after 2013) | 38.25% | 5.63% | $48.39 million |
| Loomis Sayles High Income Opportunities Fund (LSIOX) | 38.08% | 5.60% | $48.33 million |
| Ivy High Income Fund (IVHIX) | 32.40% | 4.86% | $46.34 million |
| Merrill Lynch US High Yield Index | 32.31% | 4.85% | $46.31 million |

## 6.  Transamerica Partners Mid Value Portfolio

74.    The Transamerica Partners Mid Value Portfolio (the "Mid Value Portfolio") seeks to provide a high total investment return by investing primarily in stocks of medium sized companies ("mid cap" companies) that have below market valuations and present an opportunity for earnings improvement. The Mid Value Portfolio considers mid cap companies to be those companies with a market value within the range of companies included in the Russell Mid Cap Value Index (between approximately $4.4 billion and $29 billion as of its most recent

---

[18] Upon information and belief, this was the approximate value of the assets in the Portfolio as of December 31, 2012.

[19] According to Plan documents, effective March 24, 2017, the Transamerica Partners High Yield Bond Portfolio reorganized into the mutual fund, the Transamerica High Yield Bond Fund, Class I3 Shares (TAHTX).

reconstitution on June 23, 2017). If a participant in the Plan sought an actively managed mid-cap value strategy, the Mid Value Portfolio was the only option available to them.

75.     According to the Plan's own documents dated September 1, 2018, on an annualized basis, the Mid Value Portfolio had underperformed its benchmark, the Russell Mid Cap Value Index, for the past one (-4.84%), five (-1.0%), and ten-year periods (-.76%).

76.     Based on performance data set forth in the Forms N-CSR filed with the SEC and other available Morningstar performance data, in the ten-year period between 2008 and 2017, the Mid Value Portfolio was an underachiever relative to its benchmark, the Russell Mid Cap Value Index, underperforming seven out of ten years.

77.     Based on performance data set forth in the Forms N-CSR filed with the SEC and other available Morningstar performance data, in the five-year period leading up to the approximate start of the Class Period, the Mid Value Portfolio underperformed its benchmark, the Russell Mid Cap Value Index, by 2.88%. It also underperformed other funds identified by Morningstar as comparable midcap value funds: the American Century Mid Cap Value Fund by 14.81%, the Victory Sycamore Established Fund by 10.48%, and the T. Rowe Price Mid Cap Fund by 8.06%.

78.     Table 5a below illustrates the Mid Value Portfolio's annual and cumulative underperformance relative to the three comparator funds (T. Rowe Price Mid Cap Value Fund; American Century Mid Cap Value Fund; and Victory Sycamore Established Value Fund I) and the benchmark (Russell Mid Cap Value Index) between 2008 and 2012. The Mid Value Portfolio's underperformance was such that any prudent fiduciary would have noticed it, would have undertaken an investigation of readily available alternative investments, and would have removed the Portfolio at the start of the Class Period.

**Table 6a.  Mid Value Portfolio Performance 2008-2012**

| Fund | 2008 | 2009 | 2010 | 2011 | 2012 | Cumulative |
|---|---|---|---|---|---|---|
| Transamerica Partners Mid Value Portfolio | -37.73 | 32.53 | 21.29 | -2.19 | 19.50 | **+17.00%** |
| | | | | | | |
| T. Rowe Price Mid Cap Value Fund (TRMIX) | -34.57 | 46.68 | 16.45 | -4.82 | 19.63 | **+27.25%** |
| Transamerica +/-[20] | -4.83 | -9.65 | 4.16 | 2.76 | -0.11 | |
| +/- Cumulative | -4.83 | -14.01 | -10.44 | -7.96 | -8.06 | **-8.06%** |
| | | | | | | |
| American Century Mid Cap Value Fund (AVUAX) | -24.34 | 30.55 | 19.80 | -0.52 | 16.66 | **+37.33%** |
| Transamerica +/- | -17.70 | 1.52 | 1.24 | -1.68 | 2.43 | |
| +/- Cumulative | -17.70 | -16.45 | -15.41 | -16.83 | -14.81 | **-14.81%** |
| | | | | | | |
| Victory Sycamore Established Value Fund I (VEVIX) | -29.12 | 34.21 | 21.51 | 0.48 | 12.53 | **+30.70%** |
| Transamerica +/- | -12.15 | -1.25 | -0.18 | -2.66 | 6.19 | |
| +/- Cumulative | -12.15 | -13.25 | 13.40 | 15.71 | -10.48 | **-10.48%** |
| | | | | | | |
| Russell Mid Cap Value Index | -38.44 | 34.21 | 24.75 | -1.38 | 18.51 | **+20.46%** |
| Transamerica +/- | 1.15 | -1.25 | -2.77 | -0.82 | 0.84 | |
| +/- Cumulative | 1.15 | -0.11 | -2.88 | -3.68 | -2.88 | **-2.88%** |

79.    The comparator funds listed in table 6a above are well known, readily available, easily accessible to all investors, and identified by Morningstar as comparable mid-cap value investment funds.   These superior alternative investments were readily apparent such that a reasonable and objective investigation would have uncovered them.  Transamerica would not have

---

[20] This table uses compounding formulas to calculate the relative performance of the Transamerica Portfolio compared to each of the comparator funds and the benchmark. For a description of compounding formulas *see* note 3 *supra*.

had to scour the market to find them. Yet Transamerica kept its Mid Value Portfolio in the Plan despite the underperformance and a marketplace replete with clearly superior mid-cap offerings from reputable, blue-chip companies such as American Century, T. Rowe Price, and Victory Capital Management.

80. Predictably, the underperformance continued into the Class Period. The Mid Value Portfolio underperformed year after year both its benchmark and funds identified by Morningstar as comparator funds in the mid-cap value strategy for the period between January 1, 2013 and November 30, 2018. The Mid Value Portfolio underperformed the Victory Sycamore Established Fund by 9.27% and the American Century Mid Cap Value Fund by 3.00%. Due to an unusually strong 2018, the Mid Value Portfolio did perform better than its benchmark, the Russell Mid Cap Value Index, by .36%, and the T. Rowe Price Mid Cap Fund by .64%. However, between January 1, 2013 and December 31, 2017, the Mid Value Portfolio had underperformed its benchmark and all the comparators listed in Table 6a. Specifically, the Portfolio underperformed the Russell Mid Cap Value Index by 4.26%, the T. Rowe Price Mid Cap Fund by 2.94%, the American Century Mid Cap Value Fund by 7.83%, and Victory Sycamore Established Fund by 11.63%.

81. Transamerica would have seen the chronic underperformance in real time—not simply ex post with the benefit of hindsight. Transamerica's failure to remove the Mid Value Portfolio despite the ongoing underperformance raises an inference of imprudence.

82. If Transamerica had faithfully and prudently executed its fiduciary duties to the Plan and its participants, it would have replaced the its Mid Cap Value Portfolio with one of the many better-performing options available on the market. As shown in Table 6b, Transamerica's failure to replace the fund with a better fund option caused participants' retirement accounts to suffer unnecessary losses to their investment returns relative to superior performing funds.

33

**Table 6b**.  **Mid Value Portfolio Investment Growth 2013-2018**

| Fund Name | Cumulative/Compounded Performance | Annualized Performance | Growth of $40 Million |
|---|---|---|---|
| Transamerica Partners Mid Value Portfolio[21] | 95.07% | 11.96% | $78.03 million |
| T. Rowe Price Mid Cap Value Fund (TRMIX) | 93.84% | 11.84% | $77.54 million |
| American Century Mid Cap Value (AVUAX) | 101.11% | 12.53% | $80.44 million |
| Victory Sycamore Established Value Fund I (VEVIX) | 115.01% | 13.81% | $86.00 million |
| Russell Mid Cap Value Index | 94.37% | 11.89% | $77.75 million |

## V.     CLASS ACTION ALLEGATIONS

83.     Under 29 U.S.C. § 1132(a)(2), any participant or beneficiary of the Plan is authorized to bring an action individually on behalf of the Plan to enforce a breaching fiduciary's liability to the Plan under 29 U.S.C. § 1109(a).

84.     Plaintiffs seek to certify this action as a class action on behalf of all participants and beneficiaries of the Plan.  Plaintiffs seek to certify, and to be appointed as a representatives of, the following class:

---

[21] According to Plan documents, effective March 24, 2017, the Transamerica Partners Mid Value Portfolio reorganized into the mutual fund Transamerica Mid Cap Value Opportunities Fund, Class I3 Shares (TOTTX).

34

a. All participants and beneficiaries of the Plan from December 28, 2012 through the date of final judgment, excluding the Defendants (the "Class Period").

85. This action meets the requirements of Federal Rule of Civil Procedure 23(a) and is certifiable as a class action for the following reasons:

a. The class includes over 17,000 members and is so large that joinder of all its members is impracticable.

b. There are questions of law and fact common to this class because the Defendants owed fiduciary duties to the Plan and to all participants and beneficiaries, and took the actions and omissions alleged herein as to the Plan and not as to any individual participant. Common questions of law and fact include but are not limited to the following: who are the fiduciaries liable for the remedies provided by 29 U.S.C. § 1109(a); whether the fiduciaries of the Plan breached their fiduciary duties to the Plan; what are the losses to the Plan resulting from each breach of fiduciary duty; and what Plan-wide equitable and other relief the Court should impose in light of Defendants' breach of duty.

c. Plaintiffs' claims are typical of the claims of the class because each was a participant during the time period at issue in this action. Plaintiffs and all participants in the Plan were similarly harmed by Defendants' misconduct. As a result of Defendants' imprudence, Plaintiffs and all other Plan Participants suffered from deficient performance, and inadequate investment options. This directly caused each of them substantial monetary

harm. Plaintiffs and all other participants' retirement savings are depleted as compared to what they could have realized in a prudently invested Plan.

d. Plaintiffs are adequate representatives of the class because each was a participant in the Plan during the relevant period, has no interest that is in conflict with the class, is committed to the vigorous representation of the class, and has engaged experienced and competent attorneys to represent the class.

86. This action may be certified as a class action under Rule 23(b)(1)(A) or (B). Prosecution of separate actions by individual participants and beneficiaries for Defendants' breaches of fiduciary duties would create the risk of: (A) inconsistent or varying adjudications that would establish incompatible standards of conduct for Defendants in respect to the discharge of their fiduciary duties to the Plan and personal liability to the Plan under 29 U.S.C. § 1109(a); and (B) adjudications by individual participants and beneficiaries regarding these breaches of fiduciary duties and remedies for the Plan would, as a practical matter, be dispositive of the interests of the participants and beneficiaries not parties to the adjudication or would substantially impair or impede those participants' and beneficiaries' ability to protect their interests.

87. Additionally, or in the alternative, certification under Rule 23(b)(2) is appropriate because Defendants have acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole. Plaintiffs seek comprehensive reformation of the Plan to make it a more viable retirement investment option, which will benefit them and other Plan participants.

88. Additionally, or in the alternative, this action may be certified as a class under Rule 23(b)(3). A class action is the superior method for the fair and efficient adjudication of this

controversy because joinder of all participants and beneficiaries is impracticable, the losses suffered by individual participants and beneficiaries may be small and it is impracticable for individual members to enforce their rights through individual actions, and the common questions of law and fact predominate over individual questions. Given the nature of the allegations, no class member has an interest in individually controlling the prosecution of this matter, and Plaintiffs are aware of no difficulties likely to be encountered in the management of this matter as a class action.

89.     Additionally, or alternatively, this action may be certified as to particular issues under Rule 23(c)(4)—including but not limited to Defendants' liability to the class for their allegedly disloyal and imprudent conduct.

90.     Plaintiffs' counsel will fairly and adequately represent the interests of the Class and is best able to represent the interests of the Class under Rule 23(g).

## VI.     CAUSES OF ACTION

**COUNT I**

**Breach of the Duty of Prudence by Failing to Remove Imprudent Investment Options from the Plan During the Class Period**

**(Violation of ERISA, 29 U.S.C. § 1104 (a)(1)(B))**

**(Against All Transamerica Defendants)**

91.     Plaintiffs restate and incorporate the allegations in the preceding paragraphs as though fully set forth here.

92.     Transamerica presented the Plan as a strategic and financial benefit to recruit and retain workers.

37

93. In joining Transamerica and subsequently enrolling in the Plan, Transamerica employees trusted and relied on Transamerica's resources and expertise to construct and maintain a state-of-the-art 401(k) plan.

94. At all relevant times during the Class Period, the Transamerica Defendants acted as fiduciaries within the meaning of 29 U.S.C. § 1002(21)(A) by exercising authority and control with respect to the management of the Plan and its assets.

95. 29 U.S.C. § 1104(a)(1)(b) requires plan fiduciaries to act "with the care, skill, prudence and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims."

96. As fiduciaries, the Transamerica Defendants are responsible for evaluating and monitoring the Plan's investments on an on-going basis, eliminating imprudent investments, and taking all necessary steps to ensure the Plan's assets are invested prudently.

97. The Transamerica Defendants breached their fiduciary duties by retaining the following investment products despite sustained poor relative investment performance:

98. Transamerica International Equity Portfolio: The Transamerica Defendants failed to remove International Equity Portfolio despite its long-term historical and ongoing underperformance relative to its benchmark and other international equity funds.

99. Transamerica Small Cap Core Portfolio: Transamerica Defendants failed to remove its Small Cap Core Portfolio despite its historical and ongoing underperformance relative to its benchmark and other small cap funds.

38

100.    Transamerica Large Value Portfolio: The Transamerica Defendants failed to remove its Large Value Portfolio despite its historical and ongoing underperformance relative to its benchmark and other large value funds.

101.    Transamerica Large Growth Portfolio: The Transamerica Defendants failed to remove its Large Growth Portfolio despite its historical and ongoing underperformance relative to its benchmark and other large growth funds.

102.    Transamerica High Yield Bond Fund: The Transamerica Defendants failed to remove its High Yield Bond Portfolio despite its historical and ongoing underperformance relative to its benchmark and other high yield bond funds.

103.    Transamerica Mid-Cap Value Portfolio:  The Transamerica Defendants failed to remove its Mid-Cap Value Portfolio despite historical and ongoing underperformance relative to its benchmark and other mid-cap value funds.

104.    The Transamerica Defendants had an imprudent process for investigating and monitoring investments. The faulty process resulted in a plan loaded with relatively poor investment products, which substantially impaired the Plan's use, its value, and its investment performance for all the Plan's participants throughout the Class Period.

105.    By failing to adequately consider better-performing investment products and services for the Plan, the Transamerica Defendants failed to discharge their duties with the care, skill, prudence, and diligence that a prudent fiduciary acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of like character and with like aims.

106.    As a direct and proximate result of the Transamerica Defendants' breaches of fiduciary duties, the Plan and each of its participants have suffered hundreds of millions of dollars of damages and lost-opportunity costs which continue to accrue and for which the Transamerica

Defendants are jointly and severally liable pursuant to 29 U.S.C. §§ 1132(a)(2), 1132(a)(3), and 1109(a).

107.    Each of the Transamerica Defendants is liable to make good to the Plan the losses resulting from the aforementioned breaches, to restore to the Plan any profits the Transamerica Defendants made through the use of Plan assets, to restore to the Plan any profits resulting from the breaches of fiduciary duties alleged in this Count, and are subject to other equitable or remedial relief as appropriate.

108.    Each Transamerica Defendant also participated in the breach of the other Transamerica Defendants, knowing that such acts were a breach, enabled the other Transamerica Defendants to commit a breach by failing to lawfully discharge its own fiduciary duties, and knew or should have known of the breach by the other Transamerica Defendants yet failed to make any reasonable effort under the circumstances to remedy the breach. Thus, each Transamerica Defendant is liable for the losses caused by the breach of its co-fiduciary under 29 U.S.C. § 1105(a).

## COUNT II

### Failure to Monitor Fiduciaries

### (Against Transamerica and DOES 1-20)

109.    Plaintiffs restate and incorporate the allegations in the preceding paragraphs as though fully set forth here.

110.    As alleged above, Transamerica, the Investment Committee and Does 1-20 are fiduciaries under 29 U.S.C. § 1002(21).

111.    Transamerica has overall oversight responsibility for the Plan and controls the Plan's investment options. Upon information and belief, Transamerica and Does 1-20 have the

authority to appoint and remove the members of the Investment Committee and oversee the actions of the Investment Committee. Transamerica and Does 1-20 therefore have a fiduciary responsibility to monitor the performance of the other fiduciaries, including the Investment Committee.

112.   A monitoring fiduciary must ensure that the monitored fiduciaries are performing their fiduciary obligations, including those with respect to the investment and holding of plan assets, and must take prompt and effective action to protect the plan and participants when they are not doing so.

113.   To the extent that the Transamerica Defendants managed the assets of the Plan, their monitoring duty included an obligation to ensure that any delegated tasks were being performed prudently and loyally.

114.   The Transamerica Defendants breached their fiduciary monitoring duties, inter alia, by:

   a.   failing to monitor their appointees, to evaluate their appointees' performance, or to have a system in place for doing so, and standing idly by as the Plan suffered enormous losses as a result of their appointees' imprudent actions and omissions with respect to the Plan;

   b.   failing to ensure that the monitored fiduciaries considered the ready availability of comparable investment options for the Plan;

   c.   failing to remove appointees whose performance was inadequate in that they continued to maintain imprudent investments; and

   d.   failing to monitor the process by which plan investments were evaluated, which would have alerted a prudent fiduciary to the fact that the proprietary Portfolios at

issue in this action did not keep up with their stated benchmarks and underperformed comparable investment options, all to the detriment of the Plan's participants.

115. As a consequence of the Transamerica Defendants' breaches of their duty to monitor, the Plan lost millions of dollars due to investment underperformance. Had Defendants discharged their fiduciary monitoring duties loyally and prudently as described above, the losses suffered by the Plan would have been avoided.

116. Pursuant to 29 U.S.C. §§ 1132(a)(2), 1132(a)(3), and 1109(a), the Transamerica Defendants are personally liable to make good and restore to the Plan any losses to the Plan resulting from the breaches of fiduciary duties alleged in this Count and are subject to other equitable or remedial relief as appropriate.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for relief as follows:

i. A declaration that each of the Defendants who are fiduciaries of the Plan have breached their fiduciary duties under ERISA;

ii. Ordering each fiduciary found to have breached his/her/its fiduciary duties to the Plan to jointly and severally restore all losses to the Plan that resulted from the breaches of fiduciary duty or by virtue of liability pursuant to 29 U.S.C. § 1105;

iii. Ordering Defendants to provide all accountings necessary to determine the amounts Defendants must make good to the Plan under 29 U.S.C. § 1109(a);

iv. Surcharge against Defendants and in favor of the Plan all amounts involved in any transactions which such accounting reveals were improper, excessive and/or in violation of ERISA;

v.     Entering an order requiring:  (a) the disgorgement of profit made by any Defendant after June 24, 2016 for the breaches of fiduciary duty alleged herein; (b) declaring a constructive trust over any assets received by any breaching fiduciary after June 24, 2016 in connection with his/her/its breach of fiduciary duties, or violations of ERISA, or any non-fiduciary Defendant who knowingly participated in that breach or violation; and (c) any other appropriate equitable monetary relief, whichever is in the best interest of the Plan;

vi.     Removing any breaching fiduciaries as fiduciaries of the Plan and permanently enjoining them from serving as a fiduciary of any ERISA-covered plan in which Plaintiff or any member of the class is a participant or beneficiary;

vii.     Appointing an independent fiduciary, at the expense of the breaching fiduciaries, to administer the Plan and the management of the Plan's investments and/or selection of investment options and/or to oversee the divestment of the Plan's imprudent investments;

viii.     Certifying the Class, appointing each of the Plaintiffs as a class representative, and appointing Plaintiffs' counsel as Class Counsel;

ix.     Awarding Plaintiffs and the class their attorneys' fees and costs pursuant to 29 U.S.C. § 1132(g), the common benefit doctrine and/or the common fund doctrine;

x.     Awarding Plaintiffs and the members of the class pre-judgment and post-judgment interest;

xi.     Awarding such equitable, injunctive or other relief as the Court may deem appropriate pursuant to 29 U.S.C. § 1132(a)(3) or any relief to which Plaintiffs and the class are entitled to pursuant to Fed. R. Civ. P. 54(c); and

xii.     Awarding such equitable, injunctive or other relief as the Court may deem just and proper.

## PLAINTIFFS' DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a jury trial pursuant to Rule 38 of the Federal Rules of Civil Procedure and the United States Constitution.

Dated: December 28, 2018        /s/ J. Barton Goplerud

J. Barton Goplerud (Iowa Bar # AT0002983)
Shindler, Anderson, Goplerud & Weese, PC
5015 Grand Ridge Drive, Suite 100
West Des Moines, Iowa 50265
Telephone: (515) 223-4567
Facsimile: (515) 223-8887
goplerud@sagwlaw.com

Local Counsel

*Charles Field
**SANFORD HEISLER SHARP, LLP**
655 West Broadway, Suite 1700
San Diego, CA 92101
Telephone: (619) 577-4242
Facsimile: (619) 577-4250
cfield@sanfordheisler.com

*David Sanford
*Alexandra Harwin
*David Tracey
**SANFORD HEISLER SHARP, LLP**
1350 Avenue of the Americas, 31st Floor
New York, NY 10019
Phone: (646) 402-5650
Facsimile: (646) 402-5651
dsanford@sanfordheisler.com
aharwin@sanfordheisler.com
dtracey@sanfordheisler.com
*Pro hac vice forthcoming