# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# CEDAR RAPIDS DIVISION

| | |
|---|---|
| JEREMY KARG, MATTHEW R. LEMARCHE, and SHRILEY RHODES, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>TRANSAMERICA CORPORATION; TRUSTEES OF THE AEGON USA, INC. PROFIT SHARING TRUST; and DOES 1-40,<br><br>Defendants. | No. 18-CV-134-CJW-KEM<br><br>**ORDER** |

This matter is before the Court on defendants' Transamerica Corporation ("Transamerica") and Trustees of the Aegon USA, Inc. Profit Sharing Trust's ("Aegon") (collectively, "defendants") Motion to Dismiss. (Doc. 23). Plaintiffs timely filed a resistance (Doc. 29), and defendants timely filed a reply (Doc. 32). For the following reasons, defendants' motion is **denied**.

## I.   BACKGROUND

### A.   *Factual Background*

Transamerica sponsors the Transamerica 401(k) Retirement Savings Plan ("Plan") as a means for employees and participants to save for retirement. (Doc. 10, at 1, 6). Over 17,000 current and former employees had over $1.9 billion invested in the Plan as of December 31, 2017. (*Id.*, at 7). Plaintiffs are current and former participants in the Plan. (*Id.*, at 4). Plaintiffs seek to certify a class action against defendants on behalf of

all participants and beneficiaries of the Plan for the class period of December 28, 2012, to the date of final judgement in this action. (*Id.*, at 34-35). Does 1-20 are officers and directors of Plan sponsor Transamerica, who had the authority and responsibility to appoint, monitor, and remove Plan trustees. (*Id.*, at 5). Plaintiffs allege that under the Employee Retirement Income Security Act ("ERISA"), Title 29, United States Code Section 1001, *et. seq.*, Does 1-20 and Transamerica are fiduciaries of the Plan and monitoring fiduciaries of Aegon and Does 21-40. (*Id.*, at 40-41). The Plan appoints Aegon to manage the assets of the Plan. (*Id.*, at 5). Aegon is "responsible for selecting and monitoring the investment options offered to Plan participants." (Doc. 25, at 11 (citing Doc. 23-2, at 110, 112)).[1] Does 21-40 are individual trustees of Aegon who manages the assets of the Plan. (Doc. 10, at 5). Plaintiffs allege that Does 21-40 and Aegon are also fiduciaries of the Plan under ERISA. (*Id.*, at 5-6).

Plaintiffs' Amended Complaint for Damages ("complaint") asserts two counts under ERISA. First, plaintiffs allege that defendants' retention of six poor-performing investment portfolios ("challenged funds") in the Plan breached defendants' fiduciary duty of prudence. (*Id.*, at 37-40).[2] Second, plaintiffs allege that Transamerica and Does

---

[1] In ruling on a motion to dismiss the Court generally must disregard materials outside of the pleadings, but the Court may consider materials that are part of the public record and materials that are necessarily embraced by the pleadings. *Miller v. Redwood Toxicology Lab., Inc.*, 688 F.3d 928, 931 (8th Cir. 2012). An ERISA plan document is necessarily embraced by the pleadings when the complaint specifically mentions the plan under which a plaintiff's ERISA claims arose. *Van Natta v. Sara Lee Corp.*, 439 F. Supp. 2d 911, 922 n.3 (N.D. Iowa 2006). The Court finds that the various iterations of the Plan document (Doc. 23-2, at 38-43, 103-114) are necessarily embraced by plaintiffs' complaint, and the Court will consider the Plan documents as part of the record in ruling on defendants' Motion to Dismiss under Federal Rule of Civil Procedure 12(b)(6).

[2] The six portfolios are: Transamerica International Equity Portfolio, Transamerica Small Cap Core Portfolio, Transamerica Large Value Portfolio, Transamerica Large Growth Portfolio, Transamerica High Yield Bond Portfolio, and Transamerica Mid-Cap Value Portfolio.

1-20 breached their fiduciary duties to monitor the performance of Aegon and Does 21-40. (*Id.*, at 40-42). Plaintiffs allege that these breaches caused the Plan and its participants, including plaintiffs, to suffer "hundreds of millions of dollars of damages and lost-opportunity costs which continue to accrue." (*Id.*, at 39-40). Plaintiffs seek various declaratory relief, monetary damages to "restore all losses to the Plan that resulted from the breaches," and attorney's fees and costs. (*Id.*, at 42-43).

### B. Dennard *Settlement*

In 2015, certain Plan participants filed a class action suit in the Northern District of Iowa against Transamerica and its affiliates ("*Dennard* defendants") regarding the Plan and the challenged funds. *Dennard v. Transamerica Corp.*, No. 15-cv-30-EJM (N.D. Iowa) ("*Dennard*"). The Second Amended Class Action Complaint in *Dennard* ("*Dennard* complaint") alleged that the *Dennard* defendants violated their ERISA fiduciary duty of loyalty by causing the Plan to invest funds with unreasonably high expenses and engaged in prohibited transactions by charging the Plan management fees that benefited the *Dennard* defendants. (Doc. 23-2 at 178-79).[3] On May 19, 2016, United States District Court Judge Edward J. McManus approved a class action Settlement Agreement and Release between the plaintiffs and defendants in *Dennard*. (*Id.*, at 6-36). The settlement agreement required Transamerica to implement specified structural changes to the Plan and establish a settlement fund to distribute monetary damages to the class members. (*Id.*, at 17-25). The named plaintiffs and putative class

---

[3] The Court may consider items subject to judicial notice or matters of public record without converting a Rule 12(b)(6) motion into a motion for summary judgment. *Grim v. Centrum Valley Farms, L.L.P.*, No. C 15-3167-MWB, 2016 WL 1090575, at *3 n.2 (N.D. Iowa Mar. 18, 2016). District courts may take judicial notice of records of related proceedings before the same court. *Enter. Bank v. Magna Bank of Mo.*, 894 F. Supp. 1337, 1341 (E.D. Mo. 1995) (citations omitted), *aff'd*, 92 F.3d 743 (8th Cir. 1996). The Court will consider the pleadings in *Dennard*, including the portions in defendants' appendix (Doc. 23-2, at 6-36, 160-182, 184-87), as part of the record because the pleadings are judicially noticeable and are public records.

members in this case are all members of the *Dennard* class of plaintiffs.[4] The settlement agreement included a provision releasing Transamerica and its affiliates from future claims "arising out of or related to the conduct alleged in the plaintiffs' operative complaint, whether or not included as counts in the complaint." (Doc. 23-2, at 10-11).

Defendants' Motion to Dismiss asserts four grounds for dismissal. (Doc. 23, at 1). First, defendants assert that the imprudent conduct alleged in the instant suit is identical in all relevant aspects to the conduct alleged in *Dennard*, therefore plaintiffs' claims are barred by both the *Dennard* settlement agreement release provision and *res judicata*. (*Id.*, at 1-2). Second, defendants contend that plaintiffs' complaint does not allege a plausible violation of defendants' fiduciary duty of prudence. (*Id.*, at 2). Third, defendants argue that plaintiffs' imprudence claim is barred by ERISA's three-year statute-of-limitations because plaintiffs had "actual knowledge" of the challenged funds' performance well outside of the limitations period (which extends to December 28, 2015). (*Id.*). Finally, defendants assert that plaintiffs' Count II, alleging failure to monitor fiduciaries, does not state a claim because the claim it derives from, an alleged breach of fiduciary duty of prudence, is not facially plausible. (*Id.*).

## II.     APPLICABLE LAW

A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). Rule 8 does not require "detailed factual allegations." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Nevertheless, it "demands more than an unadorned, the-defendant-unlawfully-harmed-

---

[4] (*See* Docs. 10 at 1, 4 (stating that named plaintiffs were participants in the Plan between December 28, 2012 and the date of final judgment in this action)); 23-2, at 13 (defining the "Monetary Relief Class" as "all [c]urrent and [f]ormer [p]articpants in the Plan who maintained a balance of any amount in the Plan at any point during the period from February 6, 2009 to the date of entry of the Preliminary Approval Order"); *Dennard,* 15-cv-30-EJM, Preliminary Approval Order (Doc. 98) (June 24, 2016).

me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A complaint that relies on "naked assertion[s]" devoid of "further factual enhancement," "labels and conclusions," or "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555, 557.

"[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). The Court must also "grant all reasonable inferences from the pleadings in favor of the nonmoving party." *United States v. Any & All Radio Station Transmission Equip.*, 207 F.3d 458, 462 (8th Cir. 2000). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. Plausibility is not equivalent to probability, but it is something "more than a sheer possibility that a defendant has acted unlawfully." *Id*. "The question . . . is not whether [a plaintiff] might at some later stage be able to prove [his claims]; the question is whether [a plaintiff] has adequately asserted facts (as contrasted with naked legal conclusions) to support his claims." *Whitney v. Guys, Inc.*, 700 F.3d 1118, 1129 (8th Cir. 2012).

### III. DISCUSSION

#### A. *Release Provision and Res Judicata*

The parties agree that because *Dennard* was resolved by a judgment entered on a court-approved settlement agreement the scope of res judicata is coextensive with scope of the release in the settlement agreement. (Docs. 25, at 25; 29, at 7 (citing *In re Gen. Am. Life Ins. Co. Sales Practices Litig.*, 357 F.3d 800, 803 (8th Cir. 2004))). Because the scope of the release dictates the res judicata effect of the judgment in *Dennard*, the Court will analyze the scope of the release but will not separately address the applicability

of res judicata.  *Cf. Boddicker v. Esurance Inc.*, 770 F. Supp. 2d 1016, 1021 (D.S.D. 2011) ("Courts generally decide issues on the narrowest possible grounds.").

The settlement agreement provides that it "shall be governed by and construed in accordance with the laws of Iowa without giving effect to any conflict of law provisions that would cause the application of the laws of any jurisdiction other than Iowa." (Doc. 23-2, at 35). Iowa law "enforces a settlement agreement much like any other contract." *Walker v. Gribble*, 689 N.W.2d 104, 109 (Iowa 2004) (citation omitted). Plaintiffs do not contest defendants' assertion that the settlement agreement is a valid and enforceable contract. (Docs. 25, at 20-21; 29). The Court, having reviewed the *Dennard* settlement agreement (Doc. 23-2, at 6-36), concludes that it is a valid contract.

As the Court found above, for purposes of this Motion to Dismiss, plaintiffs in this case are members of the *Dennard* class. Thus, for purposes of this Motion to Dismiss, the Court finds that plaintiffs have released the "Released Claims," as defined in the settlement agreement, against Transamerica and its affiliates, including Aegon and Does 1-40. (*Id.*, at 3, 5-6, 21). The settlement agreement defines the "Released Claims" as "any and all claims [against defendants] arising out of or related to the conduct alleged in the plaintiffs' operative complaint, whether or not included as counts in the complaint." (*Id.*, at 10-11). The *Dennard* Complaint (Doc. 23-2, at 160-182) is the operative complaint referred to in the release.

Defendants contend that plaintiffs' claims in this case fall within the scope of the Released Claims in the *Dennard* settlement agreement, and thus plaintiffs' claims are barred by the settlement agreement and res judicata. (Doc. 25, at 21-25). Citing Iowa case law, defendants apply a broad definition of the phrase "arising out of or related to" used in the definition of the Released Claims in the settlement agreement. (*Id.*, at 22). Defendants interpret the conduct alleged in Count I of the *Dennard* complaint to include "Transamerica's retention of the [c]hallenged [f]unds as investment options in the Plan."

(*Id.*, at 23).  Defendants then assert that the conduct alleged in the complaint in this case, involving the same challenged funds, arises out of or is related to the conduct alleged in *Dennard*.  (*Id.*).  Defendants also argue that the high fees alleged in *Dennard* are equivalent to the inclusion of underperforming funds alleged in the instant action because both result in lower overall returns.  (*Id.*, at 24).

Plaintiffs argue that the claims in this case do not arise out of, and are not related to, the conduct alleged in *Dennard*, and therefore the *Dennard* settlement agreement does not bar plaintiffs' claims.  (Doc. 29, at 11-13).  Plaintiffs characterize the conduct alleged in Count I of the *Dennard* complaint as "self-dealing that breached the duty of loyalty."  (*Id.*, at 12).  Plaintiffs assert that the underlying conduct alleged in the complaint "involves Defendants' imprudent failure to remove investment options from the Plan after years of material underperformance."  (*Id.*, at 12-13).

The *Dennard* settlement released defendants from all claims "arising out of the conduct alleged in the plaintiffs' operative complaint, whether or not included as counts in the [*Dennard*] complaint."  (Doc. 23-2, at 10-11).  The phrase "conduct alleged" is not defined in the *Dennard* settlement agreement.  (Doc. 23-2, at 6-12).  Under Iowa law, words or phrases that are not defined in a contract are given their ordinary meaning.  *Kalell v. Mut. Fire & Auto. Ins. Co.*, 471 N.W.2d 865, 867 (Iowa 1991); *see also Thomas v. Progressive Cas. Ins. Co.*, 749 N.W.2d 678, 684 n.5 (Iowa 2008) ("[W]ords of the . . . contract are given their ordinary meaning in the absence of a definition in the . . . contract." (citations omitted)).  The *Dennard* complaint, in relevant part, alleged that Transamerica breached its ERISA fiduciary duty of loyalty when it caused the Plan to invest in funds managed by its affiliates who charged substantial middle-man fees, only to turn around and hire sub-advisors to manage the Plan's portfolio.  (Doc. 23-2, at 179).  In the instant complaint, plaintiffs allege that defendants breached their ERISA fiduciary duty of prudence by retaining poorly performing funds in the Plan.  (Doc. 10, at 37-38).

Giving the phrase its ordinary meaning, the "conduct alleged" in this case does not arise out of, and is not related to, the conduct alleged by the plaintiffs in *Dennard*. The *Dennard* complaint is premised on the manner in which defendants invested Plan assets into the challenged funds, i.e. through a middle-man who hired sub-advisors to manage the Plan's portfolio, which resulted in "substantial middle-man fees." (Doc. 23-2, at 178-79). The *Dennard* complaint asserted that as an alternative to the alleged course of conduct, "the Plan could have obtained the identical portfolio performance (before fees) that it in fact received, but at a much lower cost had the [*Dennard* defendants] contracted directly with subadvisors." (*Id.*, at 169). Thus, the conduct alleged in *Dennard* concerned the method of procuring the portfolio management service through an intermediary and the resulting fees, not the inclusion or performance of the underlying investments themselves. (*Id.*, at 169-171, 178-79). Here, the conduct alleged in Count I is defendants' retention of the challenged funds in the Plan despite their sustained poor performance, without regard to whether defendants incurred unreasonable or unnecessary fees in managing the challenged funds. (Doc. 10, at 38). The Court finds that the claims in this case arise out of and relate to different alleged conduct than the claims in *Dennard*. Thus, plaintiffs' claims are not barred by the *Dennard* settlement agreement's release, or by the doctrine of res judicata.

### B.   *Factual Basis of the Imprudence Claim*

"ERISA is a comprehensive statute designed to promote the interests of employees and their beneficiaries in employee benefit plans." *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 90 (1983) (citations omitted). Fiduciary duties under ERISA are among "the highest known to the law," and include the requirement that fiduciaries act prudently in making investment decisions. *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 598 (8th Cir. 2009) (citation omitted). The duty of prudence includes an ongoing obligation to

monitor investments and remove imprudent ones. *Tibble v. Edison Int'l*, 135 S. Ct. 1823, 1829 (2015).

Defendants assert that Count I of the complaint, alleging that defendants' investment process was imprudent, should be dismissed for failing to state a claim on three independent grounds. (Doc. 25, at 26). Defendants first assert that it is not a violation of ERISA's fiduciary duty of prudence for a plan sponsor to offer affiliated investment funds, and that to the extent plaintiffs' claim is based on this proposition, plaintiffs' complaint fails to state a claim for imprudence. (*Id.*, at 26-27). Second, defendants argue that plaintiffs fail to state a facially plausible claim of imprudence. Defendants assert that plaintiffs must plead facts to show that defendants employed a flawed process for selecting investments, and that allegations of poor performance alone are insufficient. (*Id.*, at 27-28). Defendants go on to argue that plaintiffs' admitted lack of "actual knowledge . . . of Defendants' decision-making processes . . . for selecting, monitoring, and removing plan investments," is fatal to plaintiffs' imprudence claim. (*Id.*, at 28-29 (quoting Doc. 10, at 9)). Finally, defendants contend that plaintiffs' imprudence claim is implausible because defendants' substitution of sub-advisors and the performance record of challenged funds demonstrates that defendants acted prudently. (*Id.*, at 31).

### *1. Plaintiffs' Imprudence Claim is not based on Fund Affiliation*

Plaintiffs' allegation of imprudent conduct is not based on the challenged funds' affiliation with Transamerica. Defendants' contention that plaintiffs' claim is based on the affiliation between Transamerica and the challenged funds' managers frames plaintiffs' claim as a breach of the fiduciary duty of loyalty under ERISA Section 1104(a)(1)(A). Plaintiffs' complaint, however, alleges a violation of defendants' fiduciary duty of prudence under Section 1104(A)(1)(B). (Doc. 10, at 37); *see Wildman v. Am. Century Servs., LLC*, 362 F. Supp. 3d 685, 701-02 (W.D. Mo. 2019) (describing

the different requirements of the duties of loyalty and prudence). Regardless of whether an investment is affiliated with the fiduciary, the fiduciary has an "obligation to act prudently in monitoring the underlying investments." *Nelsen v. Principal Glob. Inv'rs Tr. Co.*, 362 F. Supp. 3d 627, 641 (S.D. Iowa 2019) (citation omitted). Plaintiffs' complaint alleges that the selection and retention of "substandard investment portfolios," constituted imprudent conduct. (Doc. 10, at 2). Plaintiffs' statement that the allegedly substandard portfolios were "managed by a Transamerica affiliate, Transamerica Asset Management," is misconstrued by defendants as the basis for the claim, but the discussion of the management relationship is merely descriptive in nature. (*Id.*, at 2); (Doc. 25, at 26). The propriety of Transamerica offering affiliated funds as part of the Plan has no bearing on whether plaintiffs have stated a claim for breach of the duty of prudence.

### 2. *Decision Making Process*

The ERISA duty of prudence requires fiduciaries to act "with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use." *Braden*, 588 F.3d at 595 (quoting 29 U.S.C. § 1104(a)(1)). The duty of prudence is an objective standard that focuses on the fiduciaries' decision-making process, not the results of the process. *Id.* at 595. ERISA plaintiffs, however, "generally lack the inside information necessary to make out their [imprudence] claims in detail unless and until discovery commences." *Id.* at 598. Courts employ a "holistic evaluation of an ERISA complaint's factual allegations" and "draw reasonable inferences in favor of the nonmoving party as required" to effectively serve ERISA's remedial purpose. *Id.*

An ERISA claim alleging an imprudent investment process can survive a motion to dismiss "[e]ven when the alleged facts do not 'directly address [ ] the process by which the Plan was managed,'" because a court can infer a flawed process from circumstantial factual allegations. *Pension Ben. Guar. Corp. ex rel. St. Vincent Catholic Med. Ctr.*

*Ret. Plan v. Morgan Stanley Inv. Mgmt. Inc.*, 712 F.3d 705, 718 (2d Cir. 2013) (quoting *Braden*, 588 F.3d at 596) (alteration in original). "[A] plaintiff relying on inferences from circumstantial allegations" is required to allege facts that show "a prudent fiduciary in like circumstances would have acted differently." *Id.* at 720. At the pleading stage, "a plaintiff must provide a sound basis for comparison—a meaningful benchmark," such as a market index, "[t]o show that 'a prudent fiduciary in like circumstances' would have selected a different fund." *Meiners v. Wells Fargo & Co.*, 898 F.3d 820, 822 (8th Cir. 2018). Simply pleading that a comparable fund outperformed the fund at issue without referencing a meaningful benchmark is insufficient to state a claim of imprudence. *See id.* at 823. ("No authority requires a fiduciary to pick the best performing fund.").

Here, plaintiffs' complaint alleges sufficient factual information "to raise a reasonable expectation that discovery will reveal evidence of [the conduct alleged]." *Twombly*, 550 U.S. at 556. Plaintiffs' acknowledgement that they "do not have actual knowledge of the specifics of Defendants' decision-making processes" (Doc. 10, at 9) is not fatal to their imprudence claim at the pleading stage. *See Meiners*, 898 F.3d at 822. Defendants incorrectly assert that plaintiffs' complaint solely alleges underperformance of challenged funds in comparison to selected comparable funds (Doc. 25, at 28), ignoring plaintiffs' performance comparison to the challenged funds' stated benchmarks (Doc. 10, at 10, 14, 19, 23, 27, 31). Plaintiffs' complaint asks the Court to infer defendants' imprudent investment processes by alleging that the challenged funds underperformed both competing funds and their benchmark indices. (Doc. 10, at 2-3, 10-34).

Defendants argue in their reply that plaintiffs must plead "both underperformance in comparison to a meaningful benchmark and circumstantial allegations establishing a flawed fiduciary process." (Doc. 32, at 6 (citing *Meiners*, 898 F.3d at 824)). Defendants misconstrue *Meiners*. In *Meiners*, the Eighth Circuit found that underperformance in

comparison to a meaningful benchmark is itself circumstantial evidence of a flawed fiduciary process, not a separate requirement as defendants claim. *See Meiners*, 898 F.3d at 822-23 (holding that a plaintiff must plead "some circumstantial allegations about methods to show that a prudent fiduciary in like circumstances would have acted differently," and finding that a meaningful benchmark can show that a prudent fiduciary would have selected a different fund (citation and quotation marks omitted)). Taking plaintiffs' allegations as true and drawing inferences in favor of the non-moving party, the Court can reasonably infer from the facts alleged that plaintiffs could be entitled to relief on their imprudence claim.

### 3. *Facial Plausability*

Defendants assert that plaintiffs have not stated a facially plausible claim in two ways. First, defendants argue that because Transamerica's affiliate, Transamerica Asset Management ("TAM"), changed the sub-advisors of five of the six challenged funds during the relevant period, it is implausible that defendants acted imprudently in including the challenged funds in the Plan's investment offerings. (Doc. 25, at 29-30). Defendants request that the Court take judicial notice of various Securities and Exchange Commission ("SEC") filings to show the various changes of the sub-advisors. (*Id.*, at 29; *see also* Doc. 23-1, at 10-11). Defendants then ask the Court to conclude, based on the sub-advisor changes, that defendants must have acted prudently in overseeing their sub-advisors. (Doc. 25, at 30).

The Court may take judicial notice of publicly available SEC filings. *Horizon Asset Mgmt. Inc. v. H & R Block, Inc.*, 580 F.3d 755, 761 (8th Cir. 2009). Even if the Court takes judicial notice of defendants' SEC filings, though, "it may not rely on [defendants'] opinions about what proper inferences should be drawn from them." *Main v. Am. Airlines Inc.*, 248 F. Supp. 3d 786, 794 (N.D. Tex. 2017); *see also Urakhchin v. Allianz Asset Mgmt. of Am., L.P.*, No. SACV 15-1614-JLS(JCGx), 2016 WL 4507117,

12

at *4 (C.D. Cal. Aug. 5, 2016) (taking judicial notice of SEC filings as to the existence of the filings in the public record, but declining to take judicial notice of a party's opinion of how the content of the filings should be interpreted (citation omitted)).

A complaint must include facts to rule out obvious lawful alternative explanations for the defendant's conduct. *Braden*, 588 F.3d at 596-97 (citing *Iqbal*, 556 U.S. at 680-82). Plaintiffs need not, however, rule out every possible lawful explanation for the defendants' conduct because that requirement "would invert the principle that the complaint is construed most favorably to the nonmoving party and would impose the sort of 'probability requirement' at the pleading stage which *Iqbal* and *Twombly* explicitly reject." *Id.*, at 597 (internal citation and quotation marks omitted). As the Court found above, plaintiffs' complaint sufficiently asserts the underperformance of the challenged funds in comparison to both comparable funds and the relevant market indices. TAM's substitution of its sub-advisors may indicate that defendants acted prudently, but it is merely consistent with lawful conduct. TAM's substitution of sub-advisors is not a concrete, obvious explanation for the poor performance of the challenged funds throughout the applicable period. Drawing all inferences in plaintiffs' favor, neither the existence of the sub-advisor structure nor the changes in sub-advisors renders plaintiffs' imprudence claim implausible.

Second, defendants argue that the performance data set forth in plaintiffs' complaint, as well as the Morningstar data attached to defendants' motion, does not establish that all prudent fiduciaries in defendants' position would have removed the challenged funds from the Plan. (*Id.*, at 30-31). Defendants point out that the challenged funds outperformed their respective benchmarks and the comparator funds in one or more years during the putative class period. (*Id.*). Despite outperforming the relevant benchmark or comparator funds in certain years within the period, each of the challenged funds failed to outperform the comparable funds or the relevant benchmark over the

relevant period as a whole. (Doc. 10, at 9-34). Whether good performance for one or more years during a period of otherwise poor performance is proof of prudent conduct is a factual issue that is not appropriate for the Court to resolve at this stage. *See Wildman*, 237 F. Supp. 3d at 914 (disagreement over interpretation of fees and fund comparison "raise factual issues that cannot be resolved in a motion to dismiss." (citation omitted)); *McDonald v. Jones*, No. 4:16 CV 1346 RWS, 2017 WL 372101, at *2 (E.D. Mo. Jan 26, 2017) (noting challenges to factual allegations of the complaint are premature at the motion to dismiss stage).[5] Based on the well-pleaded facts regarding the challenged funds' performance, plaintiffs' imprudence claim is plausible at this stage.

### C. *Plaintiffs' Imprudence Claim is not Time-Barred*

Defendants also argue that ERISA's three-year statute-of-limitations bars plaintiffs' imprudence claim. (Doc. 25, at 31-33). Plaintiffs filed their original complaint on December 28, 2018. (Doc. 1). Defendants argue that plaintiffs acquired "actual knowledge" of the alleged ERISA violations prior to December 28, 2015, through public disclosures for the Plan and the challenged funds containing performance information that forms the factual basis of plaintiffs' claim. (Doc. 25, at 32-22). Defendants further argue that the challenged funds' performance record, if sufficient to state a claim, cannot also be insufficient to trigger ERISA's three-year statute-of-limitations. (*Id.*, at 33).

---

[5] The Court declines to consider the screenshots of the Morningstar website that defendants attached to their Motion to Dismiss (Doc. 23-2, at 170-181). Plaintiffs inclusion of some Morningstar data in their complaint does not mean that the complaint "necessarily embraced" any and all data on Morningstar's website related to any of the funds at issue. *See Miller*, 688 F.3d at 931 n.3. Defendants allege that the Morningstar data shows "that the [c]hallenged [f]unds outperformed peer funds in multiple years throughout the putative class period." (Doc. 25, at 31). Defendants are not entitled to any inferences drawn from the data itself. *See Main*, 248 F. Supp. 3d at 794; *Urakhchin*, 2016 WL 4507117, at *4. Even if the Court were to consider the Morningstar data provided by defendants, plaintiffs' allegations regarding the challenged funds' underperformance compared to select available funds and the relevant benchmark indices throughout the putative class period state a facially plausible claim that defendants breached their duty of prudence.

Plaintiffs argue that the statute-of-limitations only bars their imprudence claim if they had actual knowledge of all material facts regarding the claim prior to December 28, 2015. (Doc. 29, at 24). Plaintiffs argue that the statute-of-limitations on duty of prudence claims begins to run when the plaintiff has actual knowledge of how the defendant selected the investment, not when the plaintiff has knowledge of the transaction itself. (*Id.*). Plaintiffs assert that they lack knowledge of defendants' decision-making process, and there is nothing in the record to show that plaintiffs had actual, rather than constructive, notice of the poor performance of the challenged funds. (*Id.*, at 25-26). Thus, plaintiffs assert that the statute-of-limitations does not bar their prudence claim.

The statute-of-limitations does not bar plaintiffs' prudence claim for two reasons. First, plaintiffs' duty of prudence claim is subject to the six-year statute-of-limitations, not the three-year statute-of-limitations alleged by defendants. ERISA's statute-of-limitations "bars breach of fiduciary duty claims after the earlier of six years from the breach or three years from the date that plaintiff acquires actual knowledge of the breach." *Brown v. Am. Life Holdings, Inc.*, 190 F.3d 856, 858-59 (8th Cir. 1999) (citing 29 U.S.C. § 113). Plaintiffs allege that "Transamerica [ ] neglected its duty to monitor the Plan's investments and remove imprudent ones." (Doc. 10, at 3). The Supreme Court has held that suits alleging a breach of this continuing duty to monitor investments and remove imprudent ones are timely as long as the alleged breach "occurred within six years of suit." *Tibble v. Edison Int'l*, 135 S. Ct. 1823, 1829 (2015). The putative class members in this case are Plan participants from December 28, 2012, through the conclusion of this case. (Doc. 10 at 1). Plaintiffs filed their original complaint on December 28, 2018. (Doc. 1). Thus, plaintiffs' fiduciary duty of prudence claim is timely under the applicable six-year statute-of-limitations.

Even if the three-year statute-of-limitations applied, plaintiffs' claim would still be timely for purposes of defendants' motion to dismiss. The "actual knowledge" required

to trigger the shorter three-year limitation encompasses "all material facts necessary to understand that some claim exists," and is specific to the nature of the alleged breach. *Brown*, 190 F.3d at 859 (citation and internal quotation marks omitted). For prohibited transaction claims under ERISA, "knowledge of the transaction would be actual knowledge of the breach." *Id.* For imprudent investment claims, however "actual knowledge of the breach would usually require some knowledge of how the fiduciary selected the investment." *Id.* (citation omitted).

"[T]he possible existence of a statute of limitations defense is not ordinarily a ground for Rule 12(b)(6) dismissal unless the complaint itself establishes the defense." *Walker v. Barrett*, 650 F.3d 1198, 1203 (8th Cir. 2011) (citation omitted). Although publicly disclosed investment plan documents may be sufficient to provide "actual knowledge" of claims alleging prohibited transactions, they are insufficient to show a plaintiff acquired "actual knowledge" of an imprudent process of selecting and retaining investment options. *See Krueger v. Ameriprise Fin., Inc.*, No. 11-cv-02781 (SRN/JSM), 2014 WL 1117018, at *2-9 (D. Minn. Mar. 20, 2014) (investment plan documents and mutual fund prospectus constituted "actual knowledge" of prohibited transactions but not of imprudent selection and retention of funds or failure to monitor and replace fiduciaries).

Thus, the three-year statute-of-limitations would not bar plaintiffs' complaint because the complaint itself does not establish that plaintiffs had "actual knowledge" of the defendants' alleged imprudent investment decision-making process prior to December 28, 2015. Plaintiffs allege defendants breached their fiduciary duty of prudence under ERISA by retaining poorly performing funds in the Plan, not that defendants conducted prohibited transactions. (*See* Doc. 10, at 39). Therefore, as plead plaintiffs' access to publicly available fund disclosures is insufficient to establish "actual knowledge" of imprudent investment processes. *See Krueger*, 2014 WL 1117018, at *2-6. Further,

plaintiffs' allegation that they "do not have actual knowledge of the specifics of Defendants' decision-making processes with respect to the Plan," taken as true at the motion to dismiss stage, prevents the Court from finding "actual knowledge" sufficient to trigger the three-year statute-of-limitations. (Doc. 10, at 9); *see also Waller v. Blue Cross of Cal.*, 32 F.3d 1337, 1341 (9th Cir. 1994) (denying the defendants Rule 12(b)(6) motion to dismiss because the court was required to accept as true the plaintiff's allegation that the action was filed within three years of obtaining actual knowledge of the defendant's alleged breach of its fiduciary duty); *Moreno v. Deutsche Bank Ams. Holding Corp.*, 15 CIV. 9936 (LGS), 2016 WL 5957307, at *4 (S.D.N.Y. Oct. 13, 2016) (accepting as true plaintiffs' explicit allegation that they did not have knowledge of the relevant facts, and denying the defendant's Rule 12(b)(6) motion to dismiss under the statute-of-limitations because the face of the complaint and judicially noticed filings did not establish plaintiffs' actual knowledge of the breaches outside the statute-of-limitations). Thus, even if plaintiffs' duty of prudence claim fell under the three-year statute-of-limitations, it would not be barred.

### D. *Failure to Monitor Claim*

Defendants contend that plaintiffs' breach of fiduciary duty to monitor claim fails to state a claim because plaintiffs' complaint does not establish the underlying imprudence claim and fails to allege any independent facts establishing the breach of duty to monitor. (Doc. 25, at 33-34). Defendants are correct that a breach of a duty to monitor claim fails if there is no underlying breach of fiduciary duty. *See Domani v. Target Corp.*, No. 17-cv-4049 (JNE/SER), 2018 WL 3014126, at *7 (D. Minn. June 15, 2018). As the Court found above, however, plaintiffs have sufficiently pled their imprudence claim. Thus, plaintiffs have pleaded the underlying fiduciary breach necessary to support their failure to monitor claim.

A failure to monitor claim under ERISA requires a plaintiff to allege facts that establish that 1) the defendant had a duty to monitor, as demonstrated by a responsibility for appointing and removing, fiduciaries responsible for the conduct in question; and 2) the defendant "had knowledge of or participated in fiduciary breaches by the appointees." *Kreuger*, 2012 WL 5873825, at *18 (quoting *Crocker v. KV Pharm. Co.*, 782 F. Supp. 2d 760, 787 (E.D. Mo. 2010)). Plaintiffs' complaint alleges, and defendants do not dispute, that "Transamerica and Does 1-20 have the authority to appoint and remove members of the Plan Trustees." (Doc. 10, at 40-41); *see also* (Doc. 25). Plaintiffs' complaint also alleges defendants breached their duty to monitor by failing to remove appointees who allowed the Plan to imprudently invest in the challenged funds, satisfying the second element of an ERISA failure to monitor claim. (Doc. 10, at 41); *see also Krueger*, 2012 WL 5873825, at *18 (holding that allegations that monitoring fiduciaries breached their duty by failing to remove appointees who caused the investment plan to suffer losses was sufficient to survive a Rule 12(b)(6) motion). Thus, at the pleading stage, plaintiffs have alleged sufficient facts to establish a failure to monitor claim under ERISA. *See id.* ("[C]ourts have been unwilling to delineate and probe the scope of defendants' monitoring duties on motions to dismiss, and have permitted such claims to proceed forward to discovery.") (citation omitted) (alteration in original).

### IV. CONCLUSION

For the reasons set forth above, defendants' Motion to Dismiss is **denied**.

**IT IS SO ORDERED** this 20th day of August, 2019.

_____
C.J. Williams
United States District Judge
Northern District of Iowa