IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
CEDAR RAPIDS DIVISION

| | |
|---|---|
| JEREMY KARG, MATTHEW R. LAMARCHE, CYNTHIA K. MARSHALL, SHIRLEY RHODES, and JEANINE E. VEGA, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>TRANSAMERICA CORPORATION; TRUSTEES OF THE AEGON USA, INC. PROFIT SHARING TRUST; and DOES 1–40;<br><br>Defendants. | Case No. 1:18-cv-00134-CJW-KEM<br><br>**MEMORANDUM IN SUPPORT OF PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**<br><br><br><br>Judge: Hon. C.J. Williams<br>Magistrate: Hon. Kelly Mahoney |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' UNRESISTED MOTION[1]
FOR ENTRY OF PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

---

[1] This motion is unresisted by Defendants in all respects except for (1) Class Counsel's estimated value of the Non-Monetary Relief provided for in the Settlement (*see infra* at page 9, section IV.B) and (2) the total fees, expenses, and incentive awards Class Counsel intends to seek in its Fee and Expense Application (*see infra* at p. 10, sections IV.D and IV.E). As noted in the parties' Settlement Agreement, Defendants have reserved the right to oppose Class Counsel's Fee and Expense Application.

1

## I. INTRODUCTION.

On behalf of themselves and approximately 24,500 participants in the Transamerica 401(k) Retirement Savings Plan (the "Plan")[2] (the "Class" and/or "Class Members"), Plaintiffs Jeremy Karg, Matthew R. LaMarche, Cynthia K. Marshall, Shirley Rhodes, and Jeanine E. Vega ("Plaintiffs"), plaintiffs in the above-captioned class action lawsuit (the "Class Action"), respectfully submit this memorandum in support of their unresisted motion for preliminary approval of an ERISA class action settlement for $5,400,000 and Non-Monetary Relief.

Plaintiffs respectfully request that the Court enter an order to preliminarily approve the settlement negotiated by Plaintiffs and Defendants in this Class Action (the "Parties"). The Parties seek to settle all claims alleged in the Second Amended Complaint filed as Docket No. 54 in the Action (the "Complaint") on behalf of Class Members. The Parties reached the Settlement after conducting significant fact and expert discovery and participating in an all-day mediation session with an independent mediator. This extensive discovery and negotiation process allowed the Parties to fully understand the value of their claims and the risks of continued litigation. That the Parties were able to reach such a favorable settlement without continued costly litigation was remarkable. The resolution of this matter presents substantial benefits to the Class Members and promotes judicial economy.

Under the terms of the proposed Settlement, Defendants will pay $5,400,000 into a settlement fund (the "Settlement Fund"), which will be allocated *pro rata* among Class Members in the Plan pursuant to a Plan of Allocation (after deduction of any attorneys' fees, expenses, and a class representative award approved by the Court). In addition, Defendants have agreed to continue to provide fiduciary training to the Trustees of the Plan and to continue to retain an

---

[2] The Aegon USA, Inc. Profit Sharing Trust was renamed the Transamerica 401(k) Retirement Savings Trust on June 9, 2020.

unaffiliated investment consultant to provide independent investment consulting services to the Trustees ("Non-Monetary Relief"). Class Counsel, Sanford Heisler Sharp, LLP, has determined the Settlement will provide fair and adequate relief to the Class Members for the claims alleged in the Complaint.

To effectuate the Settlement, Plaintiffs respectfully move the Court to: (1) grant preliminary approval of the settlement; (2) enjoin class members from pursuing any claims that arise out of or relate in any way to the claims at issue in this action pending final approval of the settlement; (3) direct notice to class members and approve the plan and the form of notice; (4) direct a procedure for any class member to make a comment in support or in opposition to the Settlement Agreement; (5) appoint Analytics, LLC as Settlement Administrator and Escrow Agent; (6) schedule a Fairness Hearing; and (7) schedule a hearing on Class Counsel's forthcoming application for fees and costs and the payment of service awards.

## II. SUMMARY OF CLAIMS AND DEFENSES.

### A. Claims.

Plaintiffs, individually and as representatives of the Class of current and former Plan participants, filed the Class Action against Defendants on December 28, 2018. Plaintiffs alleged that Defendants violated ERISA § 404, 29 U.S.C. § 1104 by retaining six Challenged Funds, defined below. Dkt. No. 1. On March 25, 2020, the Court certified the Class as all participants in the Plan who were invested in the Challenged Funds from December 28, 2012, to the date of judgment (the "Class Period"), excluding Defendants. Dkt. No. 65.

ERISA requires that plan fiduciaries act solely in the interest of the Plan when making decisions with respect to selecting, removing, replacing, and monitoring the Plan's investments. Plaintiffs allege that Defendants are plan fiduciaries and violated § 404(a)(1)(B) of ERISA by

failing to fulfill these fiduciary duties with respect to the investment offerings in the Plan. Dkt. No. 54, ¶¶91–108.

Specifically, Plaintiffs allege that Defendants improperly selected, retained, and monitored six funds offered to Plan participants: (1) Transamerica International Equity Portfolio (the "International Equity Fund"); (2) Transamerica Small Core Portfolio (the "Small Core Fund"); (3) Transamerica Large Value Portfolio (the "Large Value Fund"); (4) Transamerica Large Growth Portfolio (the "Large Growth Fund"); (5) Transamerica High Yield Bond Portfolio (the "High Yield Fund"); and (6) Transamerica Mid Value Portfolio (the "Mid Value Fund") (collectively, the "Challenged Funds"). Dkt. No. 54, ¶3. Plaintiffs hired an expert who calculated total damages of at least approximately $15 million, presuming liability.

B. Defenses.

Defendants deny the allegations in full and contend that their process for selecting, overseeing, and retaining the Challenged Funds complied with the fiduciary standards under ERISA. Defendants also contend that each of the Challenged Funds was a reasonable investment option during the Class Period and that they committed no fiduciary breaches of any kind in their administration of the Plan. Defendants and their experts further challenge Plaintiffs' expert's damage calculations and deny that Plaintiffs are entitled to any damages whatsoever.

III. LITIGATION HISTORY AND SETTLEMENT NEGOTIATIONS.

Class Counsel undertook an extensive and careful investigation from prior to filing the Complaint all the way through expert discovery. After the Parties exchanged expert rebuttal reports, the Parties agreed to mediate the claims in front of a well-respected mediator and agreed to the Settlement.

A. **Pre-Filing Investigation.**

Even before filing the original complaint, Sanford Heisler Sharp attorneys undertook a thorough and careful investigation, spanning several months, that entailed:

a) Examining and evaluating the Transamerica Plan disclosure documents sent to Plan participants detailing the fees and investment performance of each Plan investment option;

b) Reviewing Department of Labor filings from the Plan to identify fiduciaries and quantify assets under the Plan's management;

c) Assessing the investment structure and investment objectives of each Plan option based upon filings made with the Securities and Exchange Commission ("SEC");

d) Reviewing SEC filings entered on Form ADV by Transamerica and its affiliated investment advisers;

e) Interviewing over 60 current and former Plan participants to assess their claims and explore the impact of fund underperformance on Plan participants;

f) Identifying appropriate benchmarks and comparator funds;

g) Calculating the 10-year performance of each of the Plan's investment options relative to the selected benchmarks and comparator funds using financial data and performance calculations derived from Morningstar, a leading financial services organization in the United States;

h) Ascertaining potential injury to the Plan; and

i) Conducting legal research.

C. Field Decl., ¶7. The analysis of complex financial and investment data by Class Counsel is evident throughout the Complaint, particularly in Section IV. *See* Dkt. No. 1, ¶¶21–90.

### B. Litigation.

Prior to discovery, Plaintiffs were required to oppose two dispositive motions. After Plaintiffs filed the Amended Complaint, Dkt. No. 10, Defendants moved to dismiss on March 18, 2019. Dkt. No. 23. Plaintiffs filed an opposition, and the Court denied Defendants' motion in its entirety on August 20, 2019. Dkt. No. 35. Defendants asked the Court to reconsider its denial of their motion to dismiss on September 3, 2019. Dkt. No. 39. The Court rejected Defendants' invitation to do so on November 7, 2019. Dkt. No. 50. On March 25, 2020, the Court certified a Rule 23(b)(1) class encompassing all participants who held assets in the Challenged Funds from December 28, 2012, onwards. Dkt. No. 65.

During fact discovery, Plaintiffs reviewed tens of thousands of documents, engaged in extensive written discovery, and took and defended thirteen depositions. Plaintiffs served over 60 Request for Productions and diligently reviewed many documents, including Plan Documents, Investment Policy Statements, minutes and reports for the quarterly and special meetings of the Trustees of the Plan from 2008 until 2020, service agreements with Plan consultants, Summary Plan Descriptions, disclosure documents, and documents relating to the Challenged Funds. Plaintiffs further served over 270 Requests for Admissions and 20 interrogatories. Plaintiffs deposed individuals engaged in each facet of the administration and monitoring of the Plan and its investment options, including Plan Trustees, Plan consultants, Plan administrators, the portfolio managers of the Six Challenged Funds, and legal counsel of the Plan. Plaintiffs also issued and served third-party subpoenas on the consultants for the Plan and the Transamerica Pension Plan and filed a motion to compel in the District of Massachusetts to enforce compliance with one of the subpoenas.

Plaintiffs and Defendants each hired two experts to opine on liability and damages. The

Parties exchanged initial expert reports on November 5, 2020, and exchanged rebuttal reports on December 21, 2020.

    **C.**    **Negotiations and Settlement.**

The Parties agreed to attend mediation after the Parties exchanged rebuttal reports and understood the strengths and weaknesses of the claims and defenses. On February 23, 2021, the Parties attended mediation before a highly respected Judicial Arbitration and Mediation Services ("JAMS") mediator, David Geronemus, *Esq*. After extensive negotiations, the Parties reached a settlement-in-principle. Under the terms of the settlement, Transamerica agreed to pay $5,400,000 for settlement of all claims, inclusive of attorneys' fees and costs. Transamerica also agreed to the Non-Monetary Relief, which requires, during a three-year compliance period, that Defendants continue to provide fiduciary training to the Trustees of the Plan and continue to retain an unaffiliated investment consultant to provide independent investment consulting services to the Trustees.

Thereafter, the Parties prepared and executed the Settlement Agreement, memorializing the terms of the Settlement for which Plaintiffs now seek preliminary approval. *See* Settlement Agreement, attached as Exhibit 1. The terms of the Settlement Agreement were the result of extensive, arm's length negotiations.

    **D.**    **Plaintiffs' Services to the Class Members in this Action.**

Plaintiffs Karg, LaMarche, Marshall, Rhodes, and Vega, current and former Transamerica employees who had each invested in at least one of the Challenged Funds, have been involved throughout the litigation and have contributed to the investigation, discovery, and settlement of the class claims. *See* J. Karg Decl., ¶¶4–5, 7; M. LaMarche Decl., ¶¶4–5, 7; C. Marshall Decl., ¶¶4–5, 7; S. Rhodes Decl., ¶¶4–5, 7; J. Vega Decl., ¶¶4–5, 7. Plaintiffs have spent significant time

in service to the Class, consulting with Class Counsel on a variety of issues and reviewing and providing input on the Complaint. *See* Karg Decl., ¶¶4–5; M. LaMarche Decl., ¶¶4–5; C. Marshall Decl., ¶¶4–5; S. Rhodes Decl., ¶¶4–5; J. Vega Decl., ¶¶4–5. Plaintiffs gathered documents, responded to Requests for Productions and interrogatories, and sat for depositions. *See* Karg Decl., ¶¶4–5; M. LaMarche Decl., ¶¶4–5; C. Marshall Decl., ¶¶4–5; S. Rhodes Decl., ¶¶4–5; J. Vega Decl., ¶¶4–5. Plaintiffs also spent hours speaking with Class Counsel to help them understand the Plan and Defendant's practices related to the Plan. *See* Karg Decl., ¶¶4–5; M. LaMarche Decl., ¶¶4–5; C. Marshall Decl., ¶¶4–5; S. Rhodes Decl., ¶¶4–5; J. Vega Decl., ¶¶4–5. Plaintiffs have faithfully attended to their duties to act on behalf of other current and former Plan participants. *See* J. Karg Decl., ¶3; M. LaMarche Decl., ¶3; C. Marshall Decl., ¶3; S. Rhodes Decl., ¶3; J. Vega Decl., ¶3. Plaintiffs understand their responsibilities as the representatives of Class Members and have been in regular contact with Class Counsel to monitor the Class Action and provide important input and advice, including in settlement negotiations. *See* J. Karg Decl., ¶¶3–7; M. LaMarche Decl., ¶¶3–7; C. Marshall Decl., ¶¶3–7; S. Rhodes Decl., ¶¶3–7; J. Vega Decl., ¶¶3–7.

## IV. OVERVIEW OF THE SETTLEMENT AND PLAN OF ALLOCATION TERMS.

### A. Monetary Relief.

Under the Settlement, Defendants will pay $5,400,000 into the Settlement Fund. Following any deductions for Court-approved (1) attorneys' fees and costs, (b) class representative compensation, (c) administrative expenses, (d) independent fiduciary costs, and (e) tax and tax-related documents (the "Distributable Settlement Amount"), the Distributable Settlement Amount will be distributed to Class Members according to the Plan of Allocation, pursuant to which the Settlement Administrator shall determine each Class Member's Entitlement Amount by calculating each Class Member's pro rata share of the Distributable Settlement Amount.

Settlement Agreement, ¶4.2(a); Plan of Allocation, attached as Exhibit 1-B, ¶7.

Current participants in the Plan will have their Plan accounts automatically credited with their share of the Distributable Settlement Amount. Plan of Allocation, ¶9. If the current participant does not have an investment election on file, the current participant's Entitlement Amount will be invested in the Plan's default investment option. *Id*. Former participants will receive their settlement payments directly by check, or the former Plan participants can submit a rollover form to the Settlement Administrator to instead elect to receive their settlement payment through a rollover into an eligible retirement account or plan. *Id*., ¶10.

### B. Non-Monetary Relief.

The Settlement also includes non-monetary relief. Specifically, for three years from the Effective Date, Defendants have agreed to provide annual fiduciary training to the Trustees and to continue to retain an unaffiliated investment consultant for the Plan. The fiduciary training will be conducted by outside legal counsel or by the Plan's unaffiliated investment consultant, and all new Trustees shall be provided with a copy of the most recent fiduciary training materials as part of their onboarding. Settlement Agreement, ¶3.2. The unaffiliated investment consultant will provide independent investment consulting services to the Trustees on approximately a quarterly basis. *Id*., ¶3.3.

In Class Counsel's view, the Plan changes that Defendants will make as part of this Settlement have significant value to the Plan's participants. Class Counsel estimates that the future monetary value of the annual fiduciary training is $30,000 and the value of the independent investment consultant is $420,000. Accordingly, Class Counsel estimates the total monetary value of the prospective relief at $450,000.

### C. Review by Independent Fiduciary.

Defendants will retain an Independent Fiduciary to review the Settlement on behalf of the Plan. Settlement Agreement, ¶2.7; *see also* Prohibited Transaction Exemption 2003-39, 68 Fed. Reg. 75,632, *as amended*, 75 Fed. Reg. 33,830 ("PTE 2003-39"). All reasonable costs and expenses of the Independent Fiduciary shall be borne by the Settlement Fund. Settlement Agreement, ¶4.1(j). The Parties will provide the Independent Fiduciary with sufficient information to support the Independent Fiduciary's review and evaluation. *Id.*, ¶2.7(c). The Independent Fiduciary will issue its report at least 30 days prior to the Fairness Hearing. *Id.*, ¶2.7(b).

### D. Attorneys' Fees and Expenses.

Plaintiff's Counsel will apply for reasonable attorneys' fees of $1,950,000 million, or one-third of the $5,850,000 million value of the Monetary and Non-Monetary Relief. Class Counsel will also apply for reimbursement of their out-of-pocket costs, which total $457,283.66. Subject to Court approval, Class Counsel fees and expenses shall be paid from the Settlement Fund prior to distribution to Class Members. Settlement Agreement, ¶¶4.1, 4.2.

### E. Incentive Award.

Plaintiffs shall petition the Court for an incentive award not to exceed $15,000 each in recognition of their service as Class Representatives. Settlement Agreement, ¶8.1(a). Public policy strongly supports service awards as recognition for Plaintiffs' important service in participating in the suit and promoting class action settlement. Such awards compensate plaintiffs for the efforts and risks they have undertaken, without which no settlement would be possible. *Tussey v. ABB, Inc.*, 850 F.3d 951, 962 (8th Cir. 2017). And, they provide an incentive for other employees to bring cases that vindicate the public's interest in having retirement funds prudently managed.

**F.     Release of Claims.**

In exchange for the relief provided by the Settlement, Class Members will release Defendants and affiliate persons from all Released Claims, which is defined as:

> 1.35. "Released Claims" shall be any and all claims for monetary, injunctive, and all other relief against the Defendant Released Parties through the date the Court enters the Final Approval Order and Judgment (including, without limitation, any Unknown Claims) arising out of or in any way related to: (a) the conduct alleged in the complaints in this Action, whether or not included as counts in the complaints; (b) the selection, retention and monitoring of the Plan's investment options, including but not limited to the Challenged Funds; (c) the performance, fees and other characteristics of the Plan's investment options, including but not limited to the Challenged Funds; (d) the nomination, appointment, retention, monitoring and removal of the Plan's Trustees; and (e) the approval by the Independent Fiduciary of the Settlement (except a claim that could only be brought against the Independent Fiduciary); except that the Released Claims shall not include claims to enforce the covenants or obligations set forth in this Agreement, nor do they include, and this Agreement does not in any way bar, limit, waive, or release, any individual claim by the Plaintiffs or a Class Member to vested benefits that are otherwise due under the terms of the Plan. With respect to the Released Claims, it is the intention of the Parties and all other Class Members and the Plan expressly to waive to the fullest extent of the law: (i) the provisions, rights and benefits of Section 1542 of the California Civil Code, which provides that "A general release does not extend to claims that the creditor or releasing party does not know or suspect to exist in his or her favor at the time of executing the release and that, if known by him or her, would have materially affected his or her settlement with the debtor or released party"; and (ii) the provisions, rights and benefits of any similar statute or common law of any other jurisdiction that may be, or may be asserted to be, applicable.

Settlement Agreement, ¶¶1.35, 6.1. According to the above, Class Members will not release: (i) claims to enforce the Settlement Agreement and (ii) claims for denial of benefits from the Plan. *Id*.

**G. Class Notice and Settlement Administration.**

Class Members will receive a direct notice of the settlement ("Settlement Notice") via electronic mail (if available) or first-class mail. Settlement Agreement, ¶2.4; Settlement Notice, attached as Exhibit 1-C. The Settlement Notice sent to former participants will include a Former Participant Rollover Form enabling them to elect to receive their settlement payment through a rollover into an eligible retirement account or plan. *See* Settlement Notice. The Settlement Notice

provides information to the Class Members regarding, among other things: (1) the nature of the claims; (2) the scope of the Class; (3) the terms of the Settlement; (4) Class Members' right to object to the Settlement and the deadline for doing so; (5) the class-wide release; (6) the identity of Class Counsel and the amount of compensation they will seek in connection with the Settlement; (7) the amount of any requested Class Representative's service award; (8) the date, time, and location of the final approval hearing; (9) Class Members' right to appear at the final approval hearing; and (10) the process for electing to receive settlement payment through a rollover into an eligible retirement account or plan (for former Plan participants only). *See id*.

The Settlement Administrator will establish a Settlement Website and a toll-free telephone call center facility that will provide callers the option to speak with a live operator if necessary. Settlement Agreement, ¶¶2.5, 2.6. In addition, the Notice to Class Members will include contact information for Class Counsel whom Class Members may contact for information. *See* Settlement Notice. These resources will be available should Class Members need more information about the Settlement.

## V. LEGAL STANDARD.

It is well settled in this Circuit that settlement is a highly favored means of resolving complex class action litigation. *See Petrovic v. Amoco Oil Co.*, 200 F.3d 1140, 1148 (8th Cir. 1999). "[A] strong public policy favors agreements, and courts should approach them with a presumption in their favor." *Id*. (citation omitted)); *see also In re Uponor, Inc., F1807 Plumbing Fittings Products Liab. Litig.*, 716 F.3d 1057, 1063 (8th Cir. 2013) ("A settlement agreement is presumptively valid." (internal quotation omitted)); *City P'ship Co. v. Atl. Acquisition Ltd. P'ship*, 100 F.3d 1041, 1043 (1st Cir. 1996) (same). Settlement spares the litigants the uncertainty, delay, and expense of a trial, while simultaneously reducing the burden on judicial resources. *In re Gen.*

12

*Motors Corp. Pick–Up Truck Fuel Tank Prod. Liab. Litig.*, 55 F.3d 768, 784 (3d Cir.1995).

Court approval of a proposed class action settlement involves two steps: preliminary and final approval. *In re Uponor, Inc.*, 716 F.3d at 1061. At the "preliminary approval" stage, the Court is not required to undertake an in-depth consideration of the final approval factors. Instead, it "must make a preliminary determination on the fairness, reasonableness, and adequacy of the settlement terms and must direct the preparation of the notice of the certification, proposed settlement, and date of the final fairness hearing." Manual for Complex Litigation, Fourth, § 21.632 (2004).

In the Eighth Circuit, to determine whether the settlement and terms are fair, reasonable and adequate, the district court should consider "(1) the merits of the plaintiff's case[ ] weighed against the terms of the settlement, (2) the defendant's financial condition, (3) the complexity and expense of further litigation, and (4) the amount of opposition to the settlement." *In re Uponor, Inc.*, 716 F.3d at 1063 (internal marks omitted). "The most important consideration in deciding whether a settlement is fair, reasonable, and adequate is the strength of the case for plaintiffs on the merits, balanced against the amount offered in settlement." *In re Wireless Tel. Fed. Cost Recovery Fees Litig.*, 396 F.3d 922, 933 (8th Cir. 2005) (internal marks omitted). The Court balances "the uncertainty of relief against the immediate benefit provided in the settlement." *Id.*; *see also Yarrington v. Solvay Pharm., Inc.*, 09-cv-2261, 2010 WL 11453553, at *8 (D. Minn. Mar. 16, 2010) (observing that "the risks surrounding a trial on the merits are always considerable").

The Court can also consider additional factors. *See DeBoer v. Mellon Mortg. Co.*, 64 F.3d 1171, 1178 (8th Cir. 1995). These additional factors can include (1) whether the settlement resulted from arm's length negotiations, (2) whether a skilled mediator was involved, (3) whether the settlement is the product of fraud or collusion, (4) whether discovery proceeded to a point where all parties were fully aware of the merits, and (5) the experience and opinion of counsel on both

sides. *Id.*; *In re Wireless,* 396 F.3d at 931; *Brehm ex rel. Brehm v. Capital Growth Fin.*, LLC, 8:07-CV-254, 2010 WL 3585641, at *1 (D. Neb. Sept. 3, 2010).

As part of preliminary approval, the Court should also direct the preparation of the notice, approve a settlement administrator, and schedule a fairness hearing. Due process and Rule 23(e) require the Court to "direct notice in a reasonable manner to all class members" who will be bound by the Settlement. Notice must "fairly apprise the prospective members of the class of the terms of the proposed settlement and of the options that are open to them in connection with the proceedings. Notice is adequate if it may be understood by the average class member." *Wal-Mart Stores Inc v. Visa USA Inc*, 396 F.3d 96, 114 (2d Cir. 2005) (quotation marks and citations omitted).

## VI. ARGUMENT.

### A. The Merits of the Case Weighed Against the Terms of the Settlement Supports Finding the Settlement Fair, Reasonable, and Adequate.

The Settlement of $5,400,000 of monetary relief and additional Non-Monetary Relief is outstanding compensation for the class claims. The Settlement provides fair and reasonable compensation when weighed against the merits of the case and when the risks and uncertainties of litigation are considered. Accordingly, this factor weighs strongly in favor of approval.

#### 1. The Settlement Provides Fair and Reasonable Compensation.

Class Counsel's damage expert calculated damages to be approximately $15 million by comparing the performance of Challenged Funds against the average performance of the Challenged Funds' peer universes over the period that Class Counsel alleged that Defendants breached their fiduciary duties. The Settlement represents approximately 36% (monetary relief only) or 39% (monetary relief and Non-Monetary Relief) of the potential damages and is well

14

within the range of settlements routinely approved by courts as reasonable. *See, e.g.*, *Newbridge Networks Sec. Litig.*, No. 94-1678, 1998 WL 765724, at *2 (D.D.C. Oct. 23, 1998) ("an agreement that secures roughly six to twelve percent of a potential recovery . . . seems to be within the targeted range of reasonableness"); *In re Rite Aid Corp. Sec. Litig.*, 146 F. Supp. 2d 706, 715 (E.D. Pa. 2001) (noting that since 1995, class action settlements have typically "recovered between 5.5% and 6.2% of class members' estimated losses"); *Mehling v. New York Life Ins. Co.*, 248 F.R.D. 455, 462 (E.D. Pa. 2008) (approving a 20% recovery in ERISA class action).

In addition, the Parties have developed neutral methods to fairly and effectively apportion the relief between Class Members. All Class Members will receive a *pro rata* share of the Settlement Fund based on their average account balance of the Challenged Funds, but with no Class Member receiving less than $10. Class Counsel's damage expert has confirmed that this method of allocation was standard and equitable. C. Field Decl., ¶15; *see also Zilhaver v. UnitedHealth Group, Inc.*, 646 F. Supp. 2d 1075, 1080 (D. Minn. 2009) (holding allocation reasonable where proceeds would be distributable in proportion to class members' calculated losses with a minimum recovery of $10).

Further, to minimize administration costs, each current participant's settlement award will be deposited directly into their 401(k) account. Former participants will receive a direct payment by check, but can otherwise elect to have their distribution rolled over into an eligible retirement account or plan. Plan of Allocation, ¶10. This is consistent with other settlements and will minimize the portion of the Settlement Fund paid as taxes and also minimize waste due to uncashed checks. *See e.g.*, *Dennard v. Transamerica*, No. 15-cv-0030 (N.D. Iowa May 20, 2016), Dkt. No 86-1 at *42; *Moreno v. Deutsche Bank Americas Holding Corp.*, No. 15-cv-9936 (S.D.N.Y. Aug. 14, 2018), Dkt. No. 321 at *8.

## 2. The Settlement Avoids the Significant Risks and Uncertainty of Litigation.

It is far from certain that Plaintiffs will ultimately be successful proving liability or damages. Plaintiffs' claims are based on a breach of prudence.[3] To prevail on the breach of prudence claims, Plaintiffs must prove that Defendants' process for monitoring Plan options was "tainted by a failure of effort, competence or loyalty." *Braden v. Wal Mart Stores, Inc.*, 588 F.3d 585, 596 (8th Cir. 2009). Plaintiffs must prove that Defendants breached their duty to monitor the Challenged Funds and failed to timely remove them, and, as a result, the Plan suffered investment losses. *See Meiners v. Wells Fargo & Co.*, 898 F.3d 820, 822 (8th Cir. 2018). Plaintiffs also would have to prove through expert testimony that the investment benchmarks or peer universes were in fact comparable to the Challenged Funds and that the underperformance analysis was not based on the benefit of pure hindsight. *See id.* at 823; *see also Pension Benefit Guar. Corp. ex rel. St. Vincent Catholic Med. Ctrs. Ret. Plan v. Morgan Stanley Inv. Mgmt., Inc.*, 712 F.3d 705, 724 (2d. Cir. 2013). If Plaintiffs are unsuccessful on any of these points, the recovery could be diminished or lost all together.

Although Plaintiffs believe there is strong support for the claims, there are risks inherent in any litigation. *See Cohn v. Nelson*, 375 F. Supp. 2d 844, 855 (E.D. Mo. 2005). Defendants vigorously contest liability and damages, and Plaintiffs would still need to survive summary judgment, trial, and an appeal. This is not guaranteed as illustrated in *Wildman v. Am. Cent. Services, LLC*, 362 F. Supp. 3d 685, 711 (W.D. Mo. 2019), where the Court held at trial that defendants did not breach the duty of prudence when it retained underperforming funds.

Further, even if Plaintiffs can establish a fiduciary breach, damages are uncertain. *See Marshall v. Natl. Football League*, 787 F.3d 502, 512 (8th Cir. 2015) (noting that the amount of

---
[3] Plaintiffs also allege that Transamerica failed to monitor the Trustees, which is derivative of the allegations that the Trustees breached their duty of prudence.

16

damages depends on expert calculations); *see also Milken & Assoc. Sec. Lit.*, 150 F.R.D. 46, 54 (S.D.N.Y. 1993) (approving settlement and noting that damage calculations are often a "battle of experts at trial, with no guarantee of the outcome"); *Bonime v. Doyle*, 416 F. Supp. 1372, 1384 (S.D.N.Y. 1976), *aff'd*, 556 F.2d 555 (2d Cir. 1977) (holding that the difficulty in determining damages is a factor supporting settlement). Plaintiffs anticipate that Defendants would move to exclude Plaintiffs' expert reports, identify purported flaws in the methodologies used, and submit a competing damage calculation with drastically reduced damages. Accordingly, the Settlement being a significant proportion of Plaintiffs' expert damage calculation weighs strongly in favor of approval.

### B. Defendants' Financial Condition Favors Preliminary Approval.

There is no indication that Transamerica Corporation's financial condition is not secure. As such, this factor weighs in favor of approval. *See Khoday v. Symantec Corp.*, 11-cv-180, 2016 WL 1637039, at *6 (D. Minn. Apr. 5, 2016), *report and recommendation adopted*, 11-cv-0180 (JRT/TNL), 2016 WL 1626836 (D. Minn. Apr. 22, 2016), *aff'd sub nom. Caligiuri v. Symantec Corp.*, 855 F.3d 860 (8th Cir. 2017).

### C. The Significant Complexity and Expense of Further Litigation Favors Approval.

"Class actions, in general, place an enormous burden of costs and expense upon parties." *Marshall*, 787 F.3d at 512 (internal marks omitted). Absent settlement, the Parties would be required to undertake expert depositions, significant motions practice, and trial. Plaintiffs also anticipate complex legal questions will be presented and which the Parties could appeal, likely lasting years. Accordingly, this factor weighs in favor of preliminary approval. *See In re Wireless*, 396 F.3d at 933 (affirming settlement where case would "likely drag on for years, require the expenditure of millions of dollars, all the while class members would receive nothing.").

### D. There is No Current Opposition to the Settlement.

At the preliminary approval stage, there is no opposition to the Settlement. The Class Representatives support the proposed settlement and believe it is fair and reasonable. *See* J. Karg Decl., ¶¶6–7; M. LaMarche Decl., ¶¶6–7; C. Marshall Decl., ¶¶6–7; S. Rhodes Decl., ¶¶6–7; J. Vega Decl., ¶¶6–7. Accordingly, this factor also favors approval at this stage. *See Vernon Gries v. Stand. Ready Mix Concrete*, L.L.C., No. 07-4013, 2009 WL 427281, at *10 (N.D. Iowa Feb. 20, 2009).

### E. Additional Factors Also Favor Preliminary Approval.

The additional factors also favor preliminary approval. The first two factors are met—the Settlement was the result of arm's length negotiations, overseen by a skilled JAMS mediator—and favor settlement approval.

The third factor is also met. There is no indication of fraud or collusion, and the "absence of collusion is reasonably inferred" in light of the adversarial litigation and "settlement being reached through the assistance of an experienced, independent mediator." *Khoday*, 2016 WL 1637039, at *8; *see also DeBoer*, 64 F.3d at 1178.

The fourth factor, whether discovery proceeded to a point that all parties were fully aware of the merits, is present. The Parties began settlement negotiations after they were apprised of the merits and risks of the case. Plaintiffs filed two amended complaints, participated in dispositive motions practice, took and defended over ten depositions, served and responded to hundreds of written discovery responses, and served expert reports and rebuttal reports. The Parties' knowledge of the claims and defenses allowed for informed settlement negotiations. This factor also weighs in favor of approval.

Finally, "courts give great weight to and may rely on the judgment of experienced counsel in its evaluation of the merits of a class action settlement." *George v. Uponor Corp.*, No. 12-249, 2015 WL 5255280, at *6 (D. Minn. Sept. 9, 2015) (internal marks omitted). The Parties are well-versed in complex class actions and both sides have already approved the settlement. *See* C. Field Decl., ¶¶13, 19, 26. This factor supports approval.

### F. Notice, Settlement Administrator, and Final Approval Hearing.

The notice provided in the Settlement Agreement satisfies due process and Rule 23(e). The Parties have agreed, subject to Court approval, to a notice plan, which calls for notice to each Class Member's last known physical or electronic address. The proposed Notice Plan will fully apprise Class Members of the existence of the lawsuit, the Settlement, the process to oppose the Settlement, and all information needed to make informed decisions. The proposed Notice Plan satisfies all due process considerations and meets the requirements of Rule 23(e)(1) and should be approved. *See Cullan and Cullan LLC v. M-Qube, Inc.*, 8:13-cv-172, 2016 WL 5394684, at *7 (D. Neb. Sept. 27, 2016).

Finally, Plaintiffs respectfully request the approval of Analytics, LLC as Settlement Administrator and Escrow Agent, charged with undertaking the responsibilities described in the Settlement Agreement, and to schedule a fairness hearing and hearing on Plaintiff's motion of an award of reasonable attorneys' fees and service awards to Plaintiffs, as set forth in the proposed Preliminary Approval Order.

### VII. CONCLUSION.

For the foregoing reasons, Plaintiffs respectfully request that the Court grant this Motion and enter the attached Proposed Order preliminarily approving the Settlement.

Dated: June 23, 2021

/s/ J. Barton Goplerud
J. Barton Goplerud (Iowa Bar # AT0002983)
Brandon M. Bohlman (Iowa Bar # AT0011668)
Brian O. Marty (Iowa Bar # AT0011622)
**SHINDLER, ANDERSON, GOPLERUD & WEESE, PC**
5015 Grand Ridge Drive, Suite 100
West Des Moines, Iowa 50265
Telephone:  (515) 223-4567
Facsimile:   (515) 223-8887
goplerud@sagwlaw.com
bohlman@sagwlaw.com
marty@sagwlaw.com

*Charles H. Field
**SANFORD HEISLER SHARP, LLP**
655 West Broadway, Suite 1700
San Diego, CA 92101
Telephone:  (619) 577-4252
Facsimile:   (619) 577-4250
cfield@sanfordheisler.com

*Kevin Sharp
**SANFORD HEISLER SHARP, LLP**
611 Commerce Street, Suite 3100
Nashville, TN 37203
Telephone:  (615) 434-7000
Facsimile:   (615) 434-7020
ksharp@sanfordheisler.com

*Robert Van Someren Greve
*Shaun Rosenthal
**SANFORD HEISLER SHARP, LLP**
700 Pennsylvania Avenue SE, Suite 300
Washington, DC 20003
Telephone:  (202) 499-5200
Facsimile:   (202) 499-5199
rvansomerengreve@sanfordheisler.com
srosenthal@sanfordheisler.com

**Admitted pro hac vice*