**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
CEDAR RAPIDS DIVISION**

| | |
|---|---|
| JEREMY KARG, MATTHEW R. LAMARCHE, CYNTHIA K. MARSHALL, SHIRLEY RHODES, and JEANINE E. VEGA, on behalf of themselves and all others similarly situated,<br><br>        Plaintiffs,<br><br>    v.<br><br>TRANSAMERICA CORPORATION; TRUSTEES OF THE AEGON USA, INC. PROFIT SHARING TRUST; and DOES 1–40;<br><br>        Defendants. | Case No. 1:18-cv-00134-CJW-KEM<br><br>**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' UNRESISTED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**<br><br><br><br>Judge: Hon. C.J. Williams<br>Magistrate: Hon. Kelly Mahoney |

MEMORANDUM IN SUPPORT OF PLAINTIFFS' UNRESISTED MOTION[1] FOR FINAL
<u>APPROVAL OF CLASS ACTION SETTLEMENT</u>

---

[1] This motion is unresisted by Defendants in all respects except for (1) Class Counsel's estimated value of the Non-Monetary Relief provided for in the Settlement (*see infra* at page 6, section (I)(B)) and (2) the total fees, expenses, and incentive awards Class Counsel requested in its Fee and Expense Application (*see infra* at page 6, section (I)(C) and page 20, section (I)(B)(3)).

## TABLE OF CONTENTS

INTRODUCTION ........................................................................................................... 1

BACKGROUND ........................................................................................................... 3

I.     SETTLEMENT BACKGROUND AND TERMS ..................................................... 3

   A.   Monetary Relief ................................................................................................ 3

   B.   Non-Monetary Relief ....................................................................................... 5

   C.   Attorneys' Fees and Expenses and Incentive Award ...................................... 5

   D.   Release of Claims ............................................................................................ 6

II.    CLASS NOTICE AND REACTION TO SETTLEMENT .................................... 7

III.  CAFA NOTICE AND REVIEW AND APPROVAL BY INDEPENDENT
FIDUCIARY ............................................................................................................... 8

STANDARD OF REVIEW .......................................................................................... 9

ARGUMENT ............................................................................................................... 9

I.     THE PROPOSED SETTLEMENT WARRANTS FINAL APPROVAL ............... 9

   A.   The Settlement is Procedurally Fair: The Class Representatives and Class Counsel Has Adequately represented the Class and Engaged in Arm's-Length Negotiations with Defendants 11

      1.   Class Counsel Adequately Represented the Class ......................................... 11

      2.   The Proposal Was Negotiated at Arm's Length ............................................. 13

      3.   The Class Representatives Adequately Represented the Class ...................... 13

   B.   The Settlement is Substantively Fair: The Relief Provided to the Class is Adequate and Equitable ....................................................................................................... 14

      1.   The Costs, Risks, and Delay of Trial and Appeal Support Settlement Approval .......... 16

      2.   The Proposed Method of Distributing Relief to the Class Will Be Highly Effective and Equitable ................................................................................................ 18

      3.   The Attorneys' Fees and Expenses and Service Awards Are Fair, Reasonable, and In Line with Other Cases ............................................................................... 19

      4.   All Agreements Have Been Identified ............................................................ 22

II.    THE NOTICE SATISFIED RULE 23 AND DUE PROCESS ......................... 22

CONCLUSION .......................................................................................................... 23

## INTRODUCTION

On behalf of themselves and approximately 24,000 current and former participants in the Transamerica 401(k) Retirement Savings Plan (the "Plan" and the "Class" and/or "Class Members"), Plaintiffs Jeremy Karg, Matthew R. Lamarche, Cynthia K. Marshall, Shirley Rhodes, and Jeanine E. Vega ("Plaintiffs") respectfully submit this memorandum in support of their unresisted motion for final approval of this class Settlement. Under the terms of the Settlement, Defendants agreed to create a $5,400,000 Settlement Fund that will benefit the Plan participants who invested in the funds challenged as imprudent in this action (the "Challenged Funds"), and they agreed to meaningful prospective Non-Monetary Relief that will add significant value for the Class and other Plan participants.

Plaintiffs brought this action under the Employee Retirement Income Security Act ("ERISA") on behalf of themselves and the Class. Plaintiffs alleged that Defendants Transamerica Corporation, the Trustees of the Aegon USA, Inc. Profit Sharing Trust, and Does 1–40 (collectively, "Defendants," or "Transamerica," and together with Plaintiffs, the "Parties"), breached their fiduciary duties in violation of ERISA. After years of motion practice and a lengthy mediation before a highly respected mediator, the Parties agreed to settle.

On July 9, 2021, the Court granted preliminary approval of the Settlement after determining that there was reason to believe that the "Settlement Agreement is fair, reasonable, and adequate, and within the range of possible approval[.]" (Doc. 87, ¶ 2). The Court also found cause to believe that "Settlement Agreement has been negotiated in good faith at arms-length between experienced attorneys familiar with the legal and factual issues of this case[.]" *Id*. In this connection, the Court (1) appointed Analytics Consulting LLC ("Analytics") as Settlement Administrator and Escrow

1

Agent; and (2) approved the manner and content of the Notice to be provided to the class as "appropriate and warranted." *Id.* ¶¶ 2, 4.

Subsequent events have confirmed the appropriateness of the Court's initial determination. After being fully informed of its terms by the Court-approved Notice, no Class Member objected to the Settlement. Further, the independent fiduciary retained to review the Settlement[2] issued a report on October 20, 2021, finding the Settlement fair and reasonable, and agreeing to the Settlement on behalf of the Plan. (Doc. 94-1).

Under the Settlement, Defendants have agreed to deposit $5,400,000 into an interest-bearing settlement fund ("Settlement Fund"), whose amounts will be allocated (after deduction of any independent fiduciary fees and costs, administration costs, taxes and tax related costs, and court-approved attorneys' fees, expenses, and Class Representative service awards), pursuant to the proposed Plan of Allocation, pro rata among Class Members who are, or were, participants in the Plan. A well-regarded ERISA expert, Dr. Steve Pomerantz, confirmed that the Plan of Allocation fairly and equitably distributes the proceeds of the Settlement to Class Members. (Doc. 82-6, ¶15). Upon final approval, the Settlement Administrator anticipates effectuating settlement payments to all approximately 24,000 Class Members pursuant to the Plan of Allocation. Declaration of Settlement Administrator in Support of Plaintiffs' Motion for Final Approval of Class Action Settlement ("Mitchell Decl.") ¶ 20.

For these reasons and the reasons detailed below, both the Settlement and Plan of Allocation are fair, reasonable, and adequate and should be approved. Plaintiffs therefore respectfully request that the Court grant final approval of the Settlement substantially in the form

---

[2] Department of Labor Prohibited Transaction Exemption ("PTE") 2003-39, requires that an independent fiduciary review the Settlement where, as here, the Plan is releasing claims, and agree to the settlement only if the independent fiduciary determines the settlement "would have been agreed to by unrelated parties under similar circumstances." 68 Fed. Reg. 75632, 75635 (Dec. 31, 2003).

submitted herewith. *See* Declaration of Charles Field in Support of Plaintiffs' Mot. for Final Approval ("Field Decl."), Ex. 2 ("Proposed Order").

**BACKGROUND**

## I.     SETTLEMENT BACKGROUND AND TERMS

As the Court has found, the Settlement results from extensive negotiations conducted "in good faith at arms-length between experienced attorneys familiar with the legal and factual issues of this case[.]" (Doc. 87, ¶ 2). After Class Counsel conducted a lengthy and thorough investigation of the legal and factual issues, Plaintiffs filed this action on December 28, 2018. (Doc. 1). Plaintiffs then opposed two dispositive motions to dismiss, (Doc. 29; Doc. 42), and pursued extensive fact and expert discovery (*see, e.g.*, Doc. 92-2, ¶¶ 6(c)-(d), 7-8).

After exchanging expert rebuttal reports, the Parties agreed to attend a mediation conducted by David Geronemus, *Esq.*, a highly respected Judicial Arbitration and Mediation Services ("JAMS") mediator. (Doc. 92-2 ¶10). After lengthy and spirited negotiations on February 23, 2021, the Parties reached a settlement under which Transamerica agreed to pay $5,400,000 for settlement of all claims, and to provide Non-Monetary Relief which requires Defendants to provide annual fiduciary training to the Plan's Trustees, and to continue to retain an unaffiliated investment consultant during a three-year compliance period ("Non-Monetary Relief"). (Doc. 82-2, §§ 1.38, 3.2-3 [hereinafter, the "Settlement Agreement"]). The Parties executed the Settlement Agreement on June 22, 2021. *Id*. at 26.

### A.     Monetary Relief

Under the Settlement, Defendants will pay $5,400,000 into the Settlement Fund. Following any deductions for (a) attorneys' fees and costs, (b) class representative compensation, (c) administrative expenses, (d) independent fiduciary costs, and (e) tax and tax-related documents

3

(the "Distributable Settlement Amount"), the Distributable Settlement Amount will be distributed to Class Members according to the Plan of Allocation.[3] (Doc. 82-4 [hereinafter "Plan of Allocation"]).

Under the Plan of Allocation, the Settlement Administrator shall determine each Class Member's Entitlement Amount by calculating each Class Member's proportionate share of the Distributable Settlement Amount based on their quarterly account balances in the Challenged Funds, but with no Class Member receiving less than $10. Plan of Allocation, ¶¶ 4-8. If more than five thousand dollars remain in the Settlement Fund as a result of uncashed checks, the remaining amount will be distributed pro rata to current participants. *Id*. ¶ 12. If the remaining amount drops below five thousand dollars, the funds will be deposited into the Plan's suspense account and used to pay Plan-related expenses, so that no portion of the funds revert to Transamerica. *Id*. Class Counsel's damage expert has confirmed that this method of allocation is standard and equitable. (Doc. 82-6, ¶ 15).

Current participants in the Plan will have their Plan accounts automatically credited with their share of the Distributable Settlement Amount. Plan of Allocation, ¶ 9. If the current participant does not have an investment election on file, the current participant's Entitlement Amount will be invested in the Plan's default investment option. *Id*. Former participants will receive their settlement payments directly by check, or they can submit a rollover form to the Settlement Administrator to instead elect to receive their settlement payment through a rollover into an eligible retirement account or plan. *Id*. ¶ 10.

---

[3] Class Counsel has applied for attorneys' fees and costs of $1,950,000 and $452,458.59, respectively, and service awards of $15,000 for each of the five Plaintiffs. Analytics has provided an estimate of $45,026 in administrative expenses, and Fiduciary Counselors has charged $15,000 for their services. Accordingly, after deducting these expenses, the Distributable Settlement Amount is projected to be $2,862,515.41, not including deductions for applicable taxes.

4

## B. Non-Monetary Relief

The Settlement also includes Non-Monetary Relief. For three years from the Effective Date,[4] Defendants have agreed to provide annual fiduciary training to the Trustees and to continue to retain an unaffiliated investment consultant for the Plan. Settlement Agreement, § III. The fiduciary training will be conducted by outside legal counsel or by the Plan's unaffiliated investment consultant, and all new Trustees shall be provided with a copy of the most recent fiduciary training materials as part of their onboarding. *Id*. § 3.2. The unaffiliated investment consultant will provide independent investment consulting services to the Trustees on approximately a quarterly basis. *Id*. § 3.3.

The Non-Monetary Relief will have a significant value to the Plan's participants. Class Counsel estimates that the future monetary value of the annual fiduciary training is $30,000 and the value of the independent investment consultant is $420,000. Accordingly, Class Counsel estimates the total monetary value of the prospective relief as $450,000.

## C. Attorneys' Fees and Expenses and Incentive Award

Class Counsel has applied for reasonable attorneys' fees of $1,950,000, or one-third of the $5,850,000 value of the Monetary and Non-Monetary Relief; reimbursement of their out-of-pocket costs, which total $452,458.59;[5] and a service award of $15,000 to each Plaintiff in recognition of their service as Class Representatives. (Doc. 92). Class Counsel's Motion for Attorneys' Fees,

---

[4] The Effective Date is defined as "(a) the date upon which the applicable period to appeal the Final Approval Order and Judgment has expired, if no appeal is taken during such period; or (b) if, during the appeals period, an appeal is taken from such Final Approval Order and Judgment, the date upon which all appeals, including further petitions for review, rehearing, or certiorari, and any proceedings resulting therefrom, have been finally disposed of, or the date upon which the applicable period to initiate such further petitions or proceedings has expired." Settlement Agreement, § 1.17.

[5] Class Counsel has increased the request for expenses from $452,104.59 in its Motion for Attorneys' Fees, Reimbursement of Expenses, and Service Awards (Doc. 92) to $452,458.59 to account for the $354 that will be expended for travel and lodging expenses for the final Fairness Hearing.

5

Reimbursement of Expenses, and Service Awards was posted on the Settlement Website to be easily accessible to all Class Members. Subject to Court approval, Class Counsel's fees and expenses shall be paid from the Settlement Fund before distribution to Class Members. Settlement Agreement, §§ 4.1, 4.2.

### D.    Release of Claims

In exchange for the relief provided by the Settlement, Plaintiffs, Class Members, and the Plan will release Defendants and affiliate persons and entities from all Released Claims, which is defined as:

> 1.35. "Released Claims" shall be any and all claims for monetary, injunctive, and all other relief against the Defendant Released Parties through the date the Court enters the Final Approval Order and Judgment (including, without limitation, any Unknown Claims) arising out of or in any way related to: (a) the conduct alleged in the complaints in this Action, whether or not included as counts in the complaints; (b) the selection, retention and monitoring of the Plan's investment options, including but not limited to the Challenged Funds; (c) the performance, fees and other characteristics of the Plan's investment options, including but not limited to the Challenged Funds; (d) the nomination, appointment, retention, monitoring and removal of the Plan's Trustees; and (e) the approval by the Independent Fiduciary of the Settlement (except a claim that could only be brought against the Independent Fiduciary); except that the Released Claims shall not include claims to enforce the covenants or obligations set forth in this Agreement, nor do they include, and this Agreement does not in any way bar, limit, waive, or release, any individual claim by the Plaintiffs or a Class Member to vested benefits that are otherwise due under the terms of the Plan. With respect to the Released Claims, it is the intention of the Parties and all other Class Members and the Plan expressly to waive to the fullest extent of the law: (i) the provisions, rights and benefits of Section 1542 of the California Civil Code, which provides that "A general release does not extend to claims that the creditor or releasing party does not know or suspect to exist in his or her favor at the time of executing the release and that, if known by him or her, would have materially affected his or her settlement with the debtor or released party"; and (ii) the provisions, rights and benefits of any similar statute or common law of any other jurisdiction that may be, or may be asserted to be, applicable.

Settlement Agreement, ¶¶ 1.35, 6.1. According to this provision, Plaintiffs, Class Members, and the Plan will not release: (i) claims to enforce the Settlement Agreement and (ii) claims for denial of benefits from the Plan. *Id*.

6

## II.    CLASS NOTICE AND REACTION TO SETTLEMENT

On August 18, 2021, the Settlement Administrator, Analytics, first mailed and/or emailed the approved Settlement Notice (and Former Participant Rollover Form, if applicable) to each Class Member identified on the class list provided by Defendants. Mitchell Decl. ¶¶ 7, 9. In total, 24,203 Settlement Notices were mailed. *Id.* ¶ 9.

Before sending these Court-approved Notices, Analytics cross-referenced the addresses provided with the United States Postal Service National Change of Address ("NCOA") Database. *Id.* ¶ 8. Analytics re-mailed any Notices that the United States Postal Service returned with updated addresses. *Id.* ¶ 12. When Notices were returned undeliverable, Analytics located new addresses through a third-party commercial data source and re-mailed the Notices. *Id.* ¶ 13. As a result, the Notice program was very effective. Analytics estimates that Notice was successfully delivered to over 98% of the Class. *Id.* ¶ 14.

On August 9, 2021, Analytics also established a settlement website, https://kargsettlement.com/, to provide Class Members with more information about the case. *Id.* ¶ 15. Among other things, the Settlement Website included: (1) court filings; (2) the Notice; (3) the Former Participant Rollover Form; (4) a list of important deadlines; (5) answers to frequently asked questions; and (6) contact information to find out more information. *Id.*; *see also* Field Decl. ¶¶ 21-22. Analytics also created and maintained a toll-free telephone support line (1-866-499-1049) as a resource for Class Members seeking information about the Settlement. Mitchell Decl. ¶ 17.

The reaction of the Settlement Class to the Settlement has been favorable. As noted above, there have been no objections to the Settlement from any Class Member. *Id.* ¶ 19; *see also* Field Decl. ¶ 23.

## III.    CAFA NOTICE

Pursuant to the Class Action Fairness Act of 2005 (28 U.S.C. §1715) ("CAFA"), Analytics served CAFA Notice to the Attorneys General and Department of Insurance Commissioners identified by Defendants as proper recipients, as well as the Attorney General of the United States, on July 2, 2021. Mitchell Decl. ¶ 6.

## IV.    REVIEW AND APPROVAL BY INDEPENDENT FIDUCIARY

Pursuant to PTE 2003-39, the Settlement was submitted to an independent fiduciary, Fiduciary Counselors, Inc. ("Fiduciary Counselors"), for review. (Doc. 94–1). In the course of its review, Fiduciary Counselors (1) reviewed court documents and other information and documents in the litigation; (2) interviewed counsel for the Parties; (3) evaluated the strengths and weaknesses of the Parties' claims and defenses in the litigation; (4) reviewed and analyzed the terms of the Settlement, including, but not limited to, the Settlement consideration and the scope of the Settlement release; (5) reviewed the Plan of Allocation proposed by the Parties; and (6) reviewed Class Counsel's request for attorneys' fees, costs, and service awards. *Id*. at 1-8. Based on its review, Fiduciary Counselors found, *inter alia*, that:

> [1] The Settlement terms, including the scope of the release of claims, the [$5.4 million Settlement amount relief provided for in the Settlement] and the amount of any attorneys' fee award or any other sums to be paid from the recovery, are reasonable in light of the Plan's likelihood of full recovery, the risks and costs of litigation, and the value of claims forgone[;]

> [2] The terms and conditions of the transaction are no less favorable to the Plan than comparable arm's-length terms and conditions that would have been agreed to by unrelated parties under similar circumstances[; and]

> [3] The transaction is not part of an agreement, arrangement or understanding designed to benefit a party in interest.

*Id.* at 1. Accordingly, Fiduciary Counselors, having determined not "to object to any aspect of the Settlement," authorized the Settlement in accordance with PTE 2003-39, and provided a "release in its capacity as a fiduciary of the Plan, for and on behalf of the Plan." *Id.* at 11.

## STANDARD OF REVIEW

Rule 23(e) of the Federal Rules of Civil Procedure requires judicial approval of any settlement agreement that will bind absent class members. The determination of whether a proposed settlement is fair falls within the sound discretion of the court. *Marshall v. Nat'l. Football League*, 787 F.3d 502, 511 (8th Cir. 2015). In evaluating the settlement, the Court must also consider the strong public policy favoring settlement, particularly in class actions. *See Petrovic v. Amoco Oil Co.*, 200 F.3d 1140, 1148 (8th Cir. 1999) (noting that "strong public policy favors agreements").

## ARGUMENT

## I.     THE PROPOSED SETTLEMENT WARRANTS FINAL APPROVAL

Federal Rule of Civil Procedure 23 provides that a class action settlement must be presented to the Court for approval. The Rule directs that a court should approve a class settlement if a court finds it "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2).

On December 1, 2018, new amendments to Rule 23(e)(2) took effect. The Rule now articulates specific factors for courts to consider when evaluating a settlement for final approval. Courts must assess whether:

> (A) the class representatives and class counsel have adequately represented the class;
> (B) the proposal was negotiated at arm's length;
> (C) the relief provided for the class is adequate, taking into account:
>> (i) the costs, risks, and delay of trial and appeal;
>> (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

9

> (iii) the terms of any proposed award of attorney's fees, including timing of payment; and
>
> (iv) any agreement required to be identified under Rule 23(e)(3); and
>
> (D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2).

The Advisory Committee Notes explain that the revised Rule sought to standardize various multi-factor tests that federal courts had previously employed to evaluate the fairness of class settlements. Advisory Comm. Notes to 2018 Amendment to Rule 23(e)(2). "The goal of [the] amendment [was] not to displace any factor, but rather to focus the court and the lawyers on the core concerns of procedure and substance that should guide the decision whether to approve the proposal." *Id*. Accordingly, as before, courts need to consider both "that the agreement is not the product of fraud or collusion and that, taken as a whole, it is fair, adequate, and reasonable to all concerned." *Marshall*, 787 F.3d at 509 (8th Cir. 2015). Subsections 23(e)(2)(A)-(B) of the revised Rule focus on the "procedural" fairness of the settlement, while subsections 23(e)(2)(C)-(D) concern the settlement's "substantive" fairness. Advisory Comm. Notes to 2018 Amendment to Rule 23(e)(2).

Here, the Settlement plainly meets the Rule's procedural and substantive requirements.[6]

---

[6] Prior to the Rule's amendment in 2018, courts in the Eighth Circuit considered nine factors to determine whether the settlement was fair, reasonable, and adequate. Substantive factors included "(1) the merits of the plaintiff[s'] case weighed against the terms of the settlement, (2) the defendant[s'] financial condition, (3) the complexity and expense of further litigation, and (4) the amount of opposition to the settlement." *Marshall*, 787 F.3d at 508. Procedural factors included: (1) whether the settlement resulted from arm's-length negotiations, (2) whether a skilled mediator was involved, (3) whether the settlement is the product of fraud or collusion, (4) whether discovery proceeded to a point where all parties were fully aware of the merits, and (5) the experience and opinion of counsel on both sides. *DeBoer v. Mellon Mortg. Co.*, 64 F.3d 1171, 1178 (8th Cir. 1995); *In re Wireless Tel. Fed. Cost Recovery Fees Litig.*, 396 F.3d 922, 932 (8th Cir. 2005); *Brehm ex rel. Brehm v. Capital Growth Fin.*, LLC, 8:07-CV-254, 2010 WL 3585641, at *1 (D. Neb. Sept. 3, 2010).

Plaintiffs' Memorandum of Law in Support of Plaintiffs' Unresisted Motion for Entry of Preliminary Approval of Class Action Settlement details how the settlement satisfies each of the factors. (*See* Doc. 82–1).

**A.      The Settlement is Procedurally Fair: The Class Representatives and Class Counsel Have Adequately represented the Class and Engaged in Arm's-Length Negotiations with Defendants**

The settlement is procedurally fair. Class Counsel brought their extensive experience to bear on the prosecution and settlement of this case. Counsel has zealously represented the Class and achieved a meaningful settlement after extensive arm's-length negotiations with Counsel for Defendants. Moreover, Plaintiffs Karg, Lamarche, Marshall, Rhodes, and Vega have assisted Counsel throughout this process and adequately represented the Class. Accordingly, the Settlement satisfies the "procedural" factors outlined in Rule 23(e)(2)(A)-(B). Advisory Comm. Note to Rule 23(e)(2)(A)-(B) (2018) (internal quotation omitted).

### 1.      Class Counsel Adequately Represented the Class

Class Counsel has adequately represented the class. As detailed in the attached Declaration of Charles Field, Class Counsel has substantial experience in complex class actions, including ERISA class actions involving 401(k) plans. *See DeBoer*, 64 F.3d at 1178 ("[C]lass counsel is experienced in this type of litigation" and "the views of counsel are to be accorded deference." (internal quotation omitted)); *see also Savani v. URS Prof. Sols., LLC*, 121 F. Supp. 3d 564, 573 (D.S.C. 2015) ("Very few plaintiffs' firms possess the skill set or requisite knowledge base to litigate . . . class-wide, statutorily based claims for pension benefits."). Class Counsel has served as lead or co-lead counsel in many class and complex actions. *See, e.g.*, Field. Decl. Ex. 1. Class Counsel is currently counsel in six ERISA class actions pending in various federal courts throughout the country. *Id*. at 3. Moreover, Class Counsel has extensive experience advising on ERISA and fiduciary duty matters, as well as overseeing the administration and operation of the types of investment funds at issue here. (Doc. 92-2, ¶¶ 21-23).

11

Before filing this action, Class Counsel rigorously investigated the Plan's investment options, which included examining and evaluating the Plan-related documentation and investment performance data. (Doc. 92–2, ¶5). Among other things, Class Counsel examined and evaluated: the disclosure documents provided to Plan participants that detailed the fees and the performance of each Plan investment option relative to its respective investment benchmark; the filings by the Plan with the Department of Labor; filings by each of the Plan's investment options with the Securities and Exchange Commission ("SEC"); and the Form ADV filed with the SEC by Transamerica and its affiliated investment advisers. *Id*. Class Counsel also interviewed 61 current and former Plan participants, identified the appropriate benchmarks and comparator funds, and calculated the 10-year performance of the Plan's investment options relative to selected benchmarks and comparator funds. *Id*.

After commencing this action and throughout its duration, Class Counsel expended all resources necessary to prosecute the case vigorously and effectively. Plaintiffs had to oppose two dispositive motions. After Plaintiffs filed an Amended Complaint (Doc. 10), Defendants moved to dismiss the case on March 18, 2019. (Doc. 23). Plaintiffs filed an opposition (Doc. 29), and the Court denied Defendants' motion in its entirety on August 20, 2019. (Doc. 35). Defendants asked the Court to reconsider its denial of their motion to dismiss on September 3, 2019. (Doc. 39). The Court rejected Defendants' invitation to do so on November 7, 2019. (Doc. 50). On March 25, 2020, the Court certified a Rule 23(b)(1) class encompassing all participants who held assets in the Challenged Funds from December 28, 2012 onwards (the "Class Period"). (Doc. 65).

Once discovery began, Class Counsel engaged in extensive fact discovery. Specifically, Class Counsel served over 60 Request for Production, and diligently reviewed and analyzed the several hundred thousand pages of documents produced in response. (Doc. 92–2, ¶6). Class

12

Counsel also served third-party subpoenas on the consultants for the Plan and the Transamerica Pension Plan and moved to compel to enforce compliance with one of these subpoenas. *Id*. Class Counsel further served over 270 Requests for Admissions and 20 Interrogatories. *Id*. Finally, Class Counsel deposed individuals engaged in each facet of the administration and monitoring of the Plan, including Plan Trustees, Plan consultants, Plan administrators, the portfolio managers of the Challenged Funds, and legal counsel of the Plan. *Id*.

Class Counsel designated two experts with extensive industry experience to opine on the prudence of Defendants' process and the alleged injury to the Plan resulting from Defendants' decision to retain the Challenged Funds as investment options in the Plan during the Class Period. Defendants likewise designated two expert witnesses. The Parties exchanged initial expert reports on November 5, 2020 and exchanged rebuttal reports on December 21, 2020. *Id.* ¶¶ 7-8.

### 2. The Proposal Was Negotiated at Arm's Length

After this heavily contested litigation, the Parties engaged in arm's-length negotiations over the terms of a potential settlement. After exchanging rebuttal reports, the Parties agreed to attend a mediation conducted by David Geronemus, *Esq.*, a highly respected JAMS mediator. (Doc. 92–2, ¶ 10). After lengthy and spirited negotiations, the Parties reached a settlement under which Transamerica agreed to pay $5,400,000 for settlement of all claims, and to provide significant Non-Monetary Relief to the Class.

### 3. The Class Representatives Adequately Represented the Class

Plaintiffs Karg, Lamarche, Marshall, Rhodes, and Vega played an instrumental role in the development and prosecution of this action. (*See* Docs. 82–6, 82–7, 82–8, 82–9, 82–10, 82–11); *see also* Field Decl. ¶ 17. Plaintiffs gathered documents, sat for depositions, responded to discovery requests, and worked with Counsel to develop an understanding of the operation of the

Plan. *Id.* Throughout the proceedings, Plaintiffs have faithfully attended to their duties to act on behalf of current and former Plan participants. Plaintiffs, who suffered losses as Plan participants, have no interests antagonistic to the interests of any of the Class Members. Through Class Counsel, Plaintiffs have proposed a settlement that awards all Class Members, including Plaintiffs, their proportionate share of the Settlement proceeds based on their investments in the Challenged Funds. *See* Section I(B)(2) below. Thus, the interests of Plaintiffs and absent Class Members align because they bring the same claims for the same remedies under the same legal theories applicable to all Class Members, who will recover their proportionate share of the Settlement Fund under the Plan of Allocation.

### B. The Settlement is Substantively Fair: The Relief Provided to the Class is Adequate and Equitable

"The relief that the settlement is expected to provide to class members is a central concern" of the analysis under Rules 23(e)(2)(C)-(D). Advisory Comm. Notes to 2018 Amendment to Rule 23(e)(2)(C)-(D) (2018); *see also Marshall*, 787 F.3d at 508 ("The single most important factor in determining whether a settlement is fair, reasonable, and adequate is a balancing of the strength of the plaintiff's case against the terms of the settlement."). The $5,400,000 Settlement here fashions significant relief for the Class.

Class Counsel's damages expert calculated damages to be approximately $15 million by comparing the performance of Challenged Funds against the average performance of the Challenged Funds' Morningstar peer universes over the period that Class Counsel alleged that Defendants breached their fiduciary duties. The Settlement represents approximately 36% (including monetary relief only) or 39% (including both monetary relief and Non-Monetary Relief) of the potential damages. This result compares favorably with settlements of similar ERISA class

actions.[7] *See, e.g.*, *Williams v. Rohm and Haas Pension,* 658 F.3d 629, 634 (7th Cir. 2011) (approving ERISA class action settlement that equaled between 24.3% and 35.5% of damages); *Price v. Eaton Vance*, No. 1:18-cv-12098-WGY, Dkt. 57 (D. Mass. Sep. 24, 2019) (approving ERISA class settlement that equaled approximately 24% of expected value); *Mehling v. New York Life Ins. Co.*, 248 F.R.D. 455, 462 (E.D. Pa. 2008) (20% recovery in ERISA class action approved); *Clark v. Duke Univ.*, No. 1:16-CV-1044, 2019 WL 2588029, at *2, 5, 7 (M.D.N.C. 2019) (approving $10.65 million monetary settlement, plus non-monetary relief, in case with total estimated damages of over $300 million); *Sims v. BB&T Corp.*, No. 1:15-cv-732, 2019 WL 1995314, at *5 (M.D.N.C. May 6, 2019) (approving $24 million ERISA 401(k) settlement that represented 19% of estimated damages in connection with claims involving proprietary funds and allegedly excessive recordkeeping expenses). This result also considerably exceeds the amount paid by the same Defendants to settle a prior ERISA class action against the Plan. *See Dennard v. Transamerica Corp.*, No. 15-cv-00030, 2016 WL 6471254, at *1 (N.D. Iowa Oct. 28, 2016) (approving settlement under which defendants agreed to pay $3.8 million in monetary relief).

Along with the monetary relief, the court also considers the "non-monetary relief offered under the settlement." *In re Target Corp. Customer Data Sec. Breach Litig.*, 892 F.3d 968, 978 (8th Cir. 2018). The Settlement Agreement provides for substantial Non-Monetary Relief. Defendants have agreed, during the three-year compliance period, to (1) provide annual fiduciary training and (2) continue to retain an independent investment consultant. This Non-Monetary Relief benefits not only Class Members, but all Plan participants, including future participants. *See*

---

[7] The monetary Settlement of approximately 36% of the potential damages also compares favorably to other class action settlements. *See In re Newbridge Networks Sec. Litig.*, No. 94-1678, 1998 WL 765724, at *2 (D.D.C. Oct. 22, 1998) ("an agreement that secures roughly six to twelve percent of a potential trial recovery . . . seems to be within the targeted range of reasonableness"); *In re Rite Aid Corp. Sec. Litig.*, 146 F. Supp. 2d 706, 715 (E.D. Pa. 2001) (noting that since 1995, class action settlements have typically "recovered between 5.5% and 6.2% of the class members' estimated losses").

15

*Krueger v. Ameriprise Fin., Inc.*, No. 11-CV-02781, 2015 WL 4246879, at *1 (D. Minn. July 13, 2015) ("Current and future Plan participants will continue to benefit for years from the affirmative relief obtained"). Class Counsel estimates the value of the Non-Monetary Relief at $450,000, (Doc. 92–2, ¶ 11), bringing the total value of the settlement to $5,850,000.

In addition to providing substantial value to Class Members, the Settlement meets the other indicia of "substantive" fairness set forth in Rule 23(e)(2)(C)-(D).

### 1. The Costs, Risks, and Delay of Trial and Appeal Support Settlement Approval

The "costs, risks, and delay" associated with taking this case to trial—and, inevitably, on appeal—weigh in favor of approval. Rule 23(e)(2)(C)(i). ERISA is an "important and complex area of law." *LaLonde v. Textron, Inc*., 369 F.3d 1, 6 (1st Cir. 2004). In a claim for imprudence, such as here, "[n]umerous courts have emphasized the many hurdles plaintiffs must clear to succeed." *Boyd v. Coventry Health Care Inc.*, 299 F.R.D. 451, 466 (D. Md. 2014). Two hurdles in particular—establishing liability and damages—would potentially involve substantial cost, risk, and delay.

First, to prevail on the breach of prudence claims, Plaintiffs must prove that Defendants' process for monitoring Plan options was "tainted by failure of effort, competence, or loyalty." *Braden v. Wal Mart Stores, Inc.*, 588 F.3d 585, 596 (8th Cir. 2009). Plaintiffs must prove that Defendants breached their duty to monitor the Challenged Funds and failed to timely remove them, and, as a result, the Plan suffered investment losses. *See Meiners v. Wells Fargo & Co.*, 898 F.3d 820, 822 (8th Cir. 2018). Plaintiffs also would have to prove through expert testimony that the investment benchmarks or peer universes were in fact comparable to the Challenged Funds and that the underperformance analysis was not based on the benefit of pure hindsight. *See id*. at 823; *see also Pension Ben. Guar. Corp. ex rel. St. Vincent Cath. Med. Ctrs. Ret. Plan v. Morgan Stanley*

*Inv. Mgmt., Inc.*, 712 F.3d 705, 724 (2d. Cir. 2013). If Plaintiffs fail on any of these points, their recovery could be lost all together.

Second, even if Plaintiffs can establish a fiduciary breach, the damages are uncertain. *See Marshall*, 787 F.3d at 512 (noting that the amount of damages depends on expert calculations); *see also Milken & Assoc. Sec. Lit.*, 150 F.R.D. 46, 54 (S.D.N.Y. 1993) (approving settlement and noting that damage calculations are often a "battle of experts at trial, with no guarantee of the outcome"); *Bonime v. Doyle*, 416 F. Supp. 1372, 1384 (S.D.N.Y. 1976), *aff'd*, 556 F.2d 555 (2d Cir. 1977) (holding that difficulty in determining damages supports settlement approval); *Tussey v. ABB, Inc.*, 746 F.3d 327, 338-39 (8th Cir. 2014) (remanding with instruction that district court should "reevaluate its method of calculating the damage award" and characterizing damages award as "speculative"). Plaintiffs expect that Defendants would move to exclude Plaintiffs' expert reports, identify purported flaws in the methodologies used, and submit a competing damage calculation with drastically reduced damages. Accordingly, the Settlement incorporating a significant proportion of Plaintiffs' expert damage calculation weighs strongly in favor of approval.

Although Plaintiffs believe there is strong support for the claims, there are inherent risks in any litigation, another factor weighing in favor of approval. *See Cohn v. Nelson*, 375 F. Supp. 2d 844, 855 (E.D. Mo. 2005). Defendants vigorously contest liability and damages, and Plaintiffs would still need to survive summary judgment, trial, and an appeal. This is not guaranteed as illustrated in *Wildman v. American Century Services, LLC*, 362 F. Supp. 3d 685, 711 (W.D. Mo. 2019), where the Court held at trial that defendants did not breach the duty of prudence when it retained underperforming funds.

17

In sum, the "costs, risks, and delay of trial and appeal" strongly favor settlement. Fed. R. Civ. P. 23(e)(2)(C)(i).

### 2. The Proposed Method of Distributing Relief to the Class Will Be Highly Effective and Equitable

The Plan of Allocation sets forth an effective and equitable method of distributing the Distributable Settlement Amount to the Class. These factors also support final approval of the settlement. *See* Fed. R. Civ. P. 23(e)(2)(C)(ii), (e)(2)(D). As discussed in Section (I)(A) above, the Parties have developed neutral methods to promptly deliver the settlement proceeds to Class Members.

All Class Members will receive a *pro rata* share of the Settlement Fund based on their average quarterly account balance of the Challenged Funds during the Class Period, but with no Class Member receiving less than $10.[8] Plan of Allocation, ¶¶ 3-8. If funds remain in the Settlement Fund as a result of uncashed checks and the value exceeds five thousand dollars, the funds will be distributed pro rata to current participants. *Id*. ¶ 12. If the value is below five thousand dollars, the funds will be deposited into the Plan's suspense account and used to pay Plan-related expenses, so that no portion of the funds revert to Transamerica. *Id*. Class Counsel's damage expert has confirmed that this method of allocation is standard and equitable. (Doc. 82-6, ¶15); *see also Zilhaver v. UnitedHealth Group, Inc.*, 646 F. Supp. 2d 1075, 1080 (D. Minn. 2009) (holding allocation reasonable where proceeds would be distributable in proportion to class members' calculated losses with a minimum recovery of $10).

---

[8] Specifically, the Settlement Administrator will obtain the quarter-end account balances for each current and former participant in the Challenged funds from the first quarter-end in 2013 until the Effective Date. Plan of Allocation, ¶ 3. The Settlement Administrator will then sum the total quarter-end balances for all the participants ("Total Balance"), as well as the total for each participant ("Participant Balance"). *Id*. ¶¶ 4-5. The Settlement Administrator will divide the Participant Balance by the Total Balance and multiply that percent by the Distributable Settlement Amount to determine the Entitlement Amount. *Id*. ¶¶ 6-7. If the Entitlement Amount is less than $10, the participant shall receive $10. *Id*. ¶ 8.

Furthermore, the Settlement Agreement provides for current Plan participants to receive their distributions directly into their Plan account tax deferred and gives former participants the option to direct their distribution into a tax-deferred vehicle if they so choose. Consequently, "the actual value to the class for the monetary part of the settlement is more than [$5.4] million." *Tussey v. ABB, Inc.*, No. 06-CV-04305, 2019 WL 3859763, at *2 (W.D. Mo. Aug. 16, 2019) [hereinafter "Tussey I"]. The Settlement Administrator will send settlement payments pursuant to the Plan of Allocation to all Class Members. Mitchell Decl. ¶ 20.

Notably, after being informed of its terms through the Court-approved Notice, no Class Member has objected to the Settlement. The fact that no Class Member objected supports the approval of the Settlement. *See DeBoer*, 64 F.3d at 1178 ("The fact that only a handful of class members objected to the settlement similarly weighs in its favor."); *accord George v. Uponor Corp.*, No. 12-249, 2015 WL 5255280, at *7 (D. Minn. Sept. 9, 2015); *Hill v. State St. Corp.*, No. 09-12146, 2015 WL 127728, at *8 (D. Mass Jan. 8, 2015).

### 3. The Attorneys' Fees and Expenses and Service Awards Are Fair, Reasonable, and In Line with Other Cases

As detailed in Plaintiffs' Motion for Attorneys' Fees, Reimbursement of Expenses, and Service Awards, the terms of the attorneys' fees award, the reimbursement of expenses, and the service awards here are fair and reasonable.

The attorneys' fee award of $1,950,000 represents 33 1/3% of the combined value of the monetary relief and Non-Monetary Relief. *See Krueger*, 2015 WL 4246879, at *1 (stating that courts must "consider the affirmative relief obtained when evaluating the overall benefit to the class."); *see also Tussey I*, 2019 WL 3859763, at *2; *Beesley v. Int'l Paper Co.*, No. 3:06-CV-703, 2014 WL 375432, at *1 (S.D. Ill. Jan. 31, 2014*)*; MANUAL FOR COMPLEX LITIGATION (Fourth) § 21.71 (2004). District Courts in the Eighth Circuit have frequently awarded attorney

19

fees of 33 1/3% to 36% of a common fund.[9] *See Tussey I*, 2019 WL 3859763, at *4 (33 1/3% fee award); *Dennard*, 2016 WL 6471254, at *1 (33 1/3% fee award); *Krueger*, 2015 WL 4246879, at *1–3 (33 1/3% fee award); *In re Iowa Ready-Mix Concrete*, 2011 WL 5547159, at *3 (36% fee award); *Carlson v. C.H. Robinson Worldwide, Inc.*, No. civ-02-3780, 2006 WL 2671105, at *8 (D. Minn. Sept. 18, 2006) (35.5% fee award); *In re E.W. Blanch Holdings, Inc. Securities Litig.*, No. 01-258, 2003 WL 23335319, at *3 (D. Minn. June 16, 2003) (33 1/3% fee award); *In re Airline Ticket Comm'n Antitrust Litig.*, 953 F. Supp. 280, 286 (D. Minn. 1997) (33 1/3% fee award). The independent fiduciary, Fiduciary Counselors, also found the requested amounts reasonable. (Doc. 94–1, p. 8). Accordingly, the fee request is reasonable.

The request to be reimbursed for $452,458.59 in costs for expenses—including, *inter alia*, experts, depositions, and data storage and development—are also reasonable. Class Counsel's out-of-pocket litigation expenses covered by this request were reasonably incurred and necessary to the prosecution of this case and are therefore properly recoverable. Indeed, working on a contingency basis, Class Counsel had a strong incentive to keep expenses at a reasonable level, *Krueger*, 2015 WL 4246879, at *3, and did so here, as a comparison with the amount of costs that courts have approved in similar cases makes plain. *See, e.g.*, *Tussey I*, 2019 WL 3859763, at *5 (approving reimbursement of $2,256,805 from common fund); *Krueger*, 2015 WL 4246879, at *3 (reimbursement of $782,209.69); *Hans v. Tharaldson*, No. 3:05-cv-0115, 2013 WL 12253179, at *3 (D.N.D. Feb. 25, 2013) (reimbursement of $2,074,726); *In re McLeodUSA Inc. Sec. Litig.*, No. 02-cv-001, 2007 WL 81956, at *4 (N.D. Iowa Jan. 8, 2007) (reimbursement of $900,000).

---

[9] The fee requested represents 33 1/3% of the total value of the Settlement. Excluding the Non-Monetary Relief, the fee award requested represents 36.1% of the Settlement—still well within the range that the Eight Circuit considers reasonable. *See Huyer v. Buckley*, 849 F.3d 395, 399 (8th Cir. 2017) (noting that, although a 38% fee award would be "on the high end of the typical range, we cannot say that it is unreasonable when compared to other awards within this circuit"); *In re U.S. Bancorp Litig.*, 291 F.3d 1035, 1038 (8th Cir. 2002) (affirming 36% fee award as reasonable).

The request for $15,000 for a service award for each Class Representative is also reasonable. *See, e.g.*, *Wineland v. Casey's Gen. Stores, Inc.*, 267 F.R.D. 669, 677 (S.D. Iowa 2009) ("Courts routinely recognize and approve incentive awards for class representatives.") (collecting cases). As detailed in Section (I)(A)(3) above, from the inception of the Class Action, Plaintiffs have faithfully attended to their duties to act on behalf of other current and former Plan participants, including by (1) responding to document requests and interrogatories; (2) reviewing and approved pleadings; (3) preparing for and being extensively questioned by Defendants during their depositions; and (4) being involved in the settlement. (Doc. 92–2, ¶ 55). This request is within the range of awards that courts within this Circuit have authorized. *See, e.g.*, *Tussey I*, 2019 WL 3859763, at *6 (approving incentive awards of $25,000 to each named plaintiff in ERISA class action); *Krueger*, 2015 WL 4246879, at *3 (same); *Zilhaver*, 646 F. Supp. 2d at 1085 (approving incentive awards of $15,000 to named plaintiffs); *see also Bell*, 2019 WL 4193376, at *6 (approving $20,000 incentive awards observing that "[w]ithout [plaintiffs'] commitment to pursuing these claims, the successful recovery for the Class would not have been possible").

Finally, the Settlement Notice advised Class Members to each of these awards. No Class Member has voiced any objection to the proposed awards. Field Decl. ¶ 23. The lack of objections supports approval of Class Counsel's fee request. *See Krueger*, 2015 WL 4246879, at *2 ("This Court finds the lack of any objections to be a sign of the Class's support for Class Counsel's Application."); *In re Xcel Energy, Inc., Sec., Derivative & "ERISA" Litig.*, 364 F. Supp. 2d 980, 1002 (D. Minn. 2005) ("No member of the ERISA class objected to . . . the request for attorney fees . . . This silence can be read as an endorsement of the results received and the services rendered by plaintiffs' counsel.").

Accordingly, the attorneys' fees, expenses, and Service Awards weigh in favor of approval of the Settlement. *See* Fed. R. Civ. P. 23(e)(2)(C)(iii).

### 4. All Agreements Have Been Identified

The Parties have identified "any agreement required to be identified under Rule 23(e)(3)," as there are no agreements other than the Settlement Agreement and Plan of Allocation described herein. Fed. R. Civ. P. 23(e)(2)(C)(iv).

## II. THE NOTICE SATISFIED RULE 23 AND DUE PROCESS

Plaintiffs were required to provide "appropriate notice" to Class Members under Rule 23(c)(2)(A). Here, the Notice also met the stricter requirement of Rule 23(c)(2)(B) (applicable only to Rule 23(b)(3) classes) to be "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B); *see also Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173-75 (1974). The Notice further satisfied Rule 23(e)(1), which requires that notice be directed "in a reasonable manner to all class members who would be bound," Fed. R. Civ. P. 23(e)(1)(B). Overall, the Notice's content and manner of dissemination "fairly apprise[d] the prospective members of the class of the terms of the proposed settlement and of the options that are open to them." *Wal-Mart Stores Inc v. Visa USA Inc*, 396 F.3d 96, 114 (2d Cir. 2005) (quotation marks and citations omitted).

As noted above, in accordance with the Court's Preliminary Approval Order, Analytics mailed copies of the Notice to Class Members and also emailed notice to all former participants. Mitchell Decl. ¶¶ 9, 11. Analytics re-mailed any Notices that the United States Postal Service returned with updated addresses. *Id*. ¶ 12. When Notices were returned undeliverable, Analytics located new addresses through a third-party commercial data source and re-mailed the Notices. *Id*.

¶ 13. As a result of these efforts, Analytics estimates that Notice was successfully delivered to over 98% of the Class. *Id*. ¶ 14.

In addition, copies of the Notice, Rollover Form, Settlement Agreement, and other relevant case documents were made available on the Settlement website, https://kargsettlement.com/. *See id*. ¶ 15. Analytics also created and maintained a toll-free telephone support line (1-866-499-1049) as a resource for Class Members seeking information about the Settlement. *Id*. ¶ 17. Further, pursuant to the Notice, Class Counsel maintained a telephone support line (1-619-577-4253) to respond to inquiries about the Settlement. Field Decl. ¶ 21. In all, 3,012 unique users visited the website, and 262 Class Members contacted Analytics. Mitchell Decl. ¶¶ 16, 18.

In sum, the efforts of Class Counsel and Analytics provided the Class with "the best notice . . . practicable under the circumstances," Fed. R. Civ. P. 23(c)(2)(B), and "fairly apprised" Class Members about the Settlement. *Wal-Mart*, 396 F.3d at 124.

## CONCLUSION

Plaintiffs respectfully request that the Court enter an order granting final approval of the Settlement in the accompanying proposed order. *See* Field Decl. Ex. 2.


Dated: November 5, 2021

*/s/ J. Barton Goplerud*
J. Barton Goplerud (Iowa Bar # AT0002983)
Brian O. Marty (Iowa Bar # AT0011622)
**SHINDLER, ANDERSON, GOPLERUD & WEESE, PC**
5015 Grand Ridge Drive, Suite 100
West Des Moines, Iowa 50265
Telephone:   (515) 223-4567
Facsimile:    (515) 223-8887
goplerud@sagwlaw.com
marty@sagwlaw.com

*Charles H. Field
**SANFORD HEISLER SHARP, LLP**
2550 Fifth Avenue, 11th Floor

23

San Diego, CA 92103
Telephone: (619) 577-4252
Facsimile: (619) 577-4250
cfield@sanfordheisler.com

*Kevin Sharp
**SANFORD HEISLER SHARP, LLP**
611 Commerce Street, Suite 3100
Nashville, TN 37203
Telephone: (615) 434-7000
Facsimile: (615) 434-7020
ksharp@sanfordheisler.com

*Shaun Rosenthal
**SANFORD HEISLER SHARP, LLP**
700 Pennsylvania Avenue SE, Suite 300
Washington, DC 20003
Telephone: (202) 499-5200
Facsimile: (202) 499-5199
srosenthal@sanfordheisler.com

*Admitted pro hac vice*

24